Chad Everett JOHNSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00088–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 11, 2002.

Decided Jan. 24, 2003.

Mary Ann Rea, Longview, for Appellant.

Andrea M. Thompson, Appellate Asst. Dist. Atty., William M. Jennings, Gregg County Dist. Atty., for State.

William M. Jennings, for State of Texas.

Before ROSS, CORNELIUS * and GRANT,** JJ.

## OPINION

Opinion by Justice WILLIAM J. CORNELIUS (Assigned).

Chad Everett Johnston pleaded guilty to possession of more than four grams but less than 200 grams of methamphetamine. A jury assessed his punishment, enhanced by a prior felony conviction, at sixty years' imprisonment and a $10,000.00 fine. In two related points of error, Johnston contends the trial court erred in overruling his motion to suppress evidence because: 1) police lacked sufficient probable cause to search his vehicle, and 2) his written statement was a product of the illegal search of his vehicle.

On May 9, 2001, a confidential informant notified Sheriff's Deputy Floyd Wingo, then assigned to the Drug Enforcement Administration (DEA) task force in Tyler, Texas, that Johnston was in possession of methamphetamine. Wingo testified that the confidential informant was well known to him and had provided reliable narcotics information in the past. Wingo also testified that he previously knew Johnston through Wingo's work as a narcotics investigator. On the occasion in question, the informant told Wingo that Johnston possessed methamphetamine and would be traveling in a green Mazda Navajo on Highway 259 en route to Street Creations, a Longview car-customizing business. Based on this tip, Wingo and another officer set up surveillance on Highway 259 in an unmarked police car.

Later that afternoon, the officers saw the green Mazda Navajo and began a "rolling surveillance." They followed the vehicle for several miles to the parking lot of Street Creations. The driver stopped the vehicle in the parking lot, and the officers approached. Wingo identified Johnston as a passenger in the vehicle. The driver had no identification. According to Wingo, Johnston was "visibly agitated," his heart was racing, he was very nervous, and he was clenching his fists. Wingo testified that, for officer safety and out of a concern that Johnston might flee, he placed handcuffs on Johnston and conducted a patdown search. During the pat-down search, Wingo found a knife on Johnston's person.

The officers then searched the vehicle and found approximately fourteen grams of methamphetamine, syringes, and several ecstasy pills. The officers placed Johnston under arrest, gave him *Miranda*[1] warnings, and took him to jail. While in

---

\* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

\*\* Ben Z. Grant, Justice, Retired, Sitting by Assignment

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

custody, Johnston gave the officers a written statement.

Both points of error raised by Johnston complain of the denial of his motion to suppress. The standard for reviewing the trial court's ruling on a motion to suppress is abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); *Maysonet v. State*, 91 S.W.3d 365, 368 (Tex.App.-Texarkana, 2002, no pet. h.). In a suppression hearing, the trial court is the sole trier of fact and the exclusive judge of the witnesses' credibility and the weight to be given their testimony. The evidence must be viewed in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim. App.1999); *Maysonet v. State*, 91 S.W.3d at 370. We afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact-findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Maysonet v. State*, 91 S.W.3d at 370.

We review the trial court's application of the law of search and seizure to those facts de novo. *State v. Ross*, 32 S.W.3d at 856. Further, when the trial court does not file findings of fact, we assume that the trial court made implicit findings that support its ruling, if those implied findings are supported by the record. *Id.* at 855. If the trial court's decision is correct on any theory of law applicable to the case, we will affirm the decision. *Id.* at 855–56.

Johnston first contends the police lacked sufficient probable cause to search his vehicle for narcotics. The State insists the police had probable cause based on a tip from a confidential informant that was corroborated by other evidence.

A confidential tip, standing alone, does not constitute probable cause. *See State v. Steelman*, 93 S.W.3d 102, 109 (Tex.Crim.App. 2002) (citing *Ebarb v. State*, 598 S.W.2d 842, 845 (Tex.Crim.App. 1980)). But probable cause may arise from information supplied by a confidential informant provided the information is corroborated. *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

*Eisenhauer v. State* provides the substantive law governing informant-based probable cause. In *Eisenhauer*, the Texas Court of Criminal Appeals held that the totality of the circumstances approach adopted by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), also applies to appellate review of probable cause for warrantless searches. *Eisenhauer v. State*, 678 S.W.2d at 952; *see also Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.1988) (restating that the "totality of the circumstance" approach, as outlined in *Eisenhauer v. State*, 678 S.W.2d at 952, is the correct standard for appellate review for warrantless searches).

Under the totality of the circumstances approach, an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of a tip. *Illinois v. Gates*, 462 U.S. at 230, 103 S.Ct 2317. These elements, however, are not entirely separate and independent requirements to be rigidly exacted in every case. Rather, they are simply closely intertwined issues that may usefully illuminate the commonsense, practical question of whether there is probable cause to believe that contraband or evidence is located in a particular place. *Id.*

The Texas Court of Criminal Appeals in *Eisenhauer* observed that seemingly innocent activities might become suspicious in

the light of an initial tip. Quoting *Gates*, the court wrote:

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens [sic] demands ... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.

*Eisenhauer v. State*, 678 S.W.2d at 954 (quoting *Illinois v. Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. 2317).

In considering the totality of the circumstances in this case, we find that the trial court did not abuse its discretion in finding probable cause. The following facts were known to the officers when they searched Johnston's vehicle: The confidential informant told Officer Wingo that Johnston would be traveling in a green Mazda Navajo, that he would be heading south from Lake of the Pines en route to Street Creations in Longview, and that he possessed methamphetamine. According to Wingo, the informant had provided reliable information in the past. In addition, Wingo testified that he knew Johnston from his work as a narcotics investigator. Wingo and other officers had also independently corroborated the informant's tip by sighting the green Mazda Navajo, following it to Street Creations, and identifying Johnston.

This information, especially when combined with the other information known to Wingo, was sufficient to raise a high degree of suspicion and created a reasonable belief that methamphetamine was located in the vehicle, thus providing the officers with probable cause to search the vehicle. *Illinois v. Gates*, 462 U.S. at 230, 103 S.Ct. 2317.

 In his second point, Johnston contends the written statement taken after his arrest was the fruit of an illegal search of the vehicle and, therefore, the trial court erred in admitting it in evidence. Johnston does not challenge the voluntariness of his statement. Because the officers had probable cause to search the vehicle, Johnston's subsequent voluntary statement was properly admitted. *See Balentine v. State*, 71 S.W.3d 763, 774 (Tex.Crim.App.2002).

The judgment is affirmed.