**Xavier Hernandez BAROCIO,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–01–00944–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 19, 2003.

Rehearing Overruled Oct. 2, 2003.

judgment.

Norman J. Silverman, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## PLURALITY OPINION

CHARLES W. SEYMORE, Justice.

Following the denial of his motion to suppress, appellant Xavier Hernandez Barocio pleaded no contest to possession of marijuana. He contends on appeal that the trial court should have suppressed the marijuana because police discovered it after entering his home without a warrant. We find that the trial court should have suppressed the marijuana. Accordingly, we reverse and remand.

### BACKGROUND

While on patrol, Harris County Deputy Wyatt noticed a car parked on the road, facing the wrong direction, with its driver's door open, and the keys in the ignition. He and Deputy Kirsch approached the home nearest the car to investigate. As they approached the front porch, they saw pry marks on the front door and a surveillance camera aimed at the front door.

Deputy Wyatt testified that they knocked and waited several minutes before Barocio answered. He testified that he could smell burnt marijuana as he stood outside the door. According to Deputy Wyatt, when Barocio opened the door, the marijuana odor became stronger. They asked for identification, but Barocio refused to provide it. Thus, Deputy Wyatt testified that he detained Barocio on the porch while Deputy Kirsch entered the home to conduct a protective sweep and investigate the odor of marijuana. Deputy Wyatt further testified that when they asked for identification, they were investigating only the odor of marijuana.

Deputy Kirsch's version differed in some respects to Deputy Wyatt's testimony. He testified that he first smelled marijuana when Barocio opened the door. Deputy Kirsch stated that he told Barocio to step outside and asked for his identification. Barocio indicated that his identification was inside the home. Deputy Kirsch testified that he then instructed Barocio to retrieve the identification. According to Deputy Kirsch, when Barocio entered the home, he and Deputy Wyatt followed without consent. Once inside, Deputy Kirsch could see a bag of marijuana lying on the kitchen counter. At that point, Deputy Kirsch conducted a protective sweep of the remainder of the home. He testified that "the principle reason" he entered the home "was the strong odor of burning marijuana inside." The "secondary reason" was to obtain identification in connection with his suspicion that Barocio was a burglar.

Finally, Barocio testified that the deputies asked him to step outside to see his driver's license and insurance card. As he stepped onto the porch, he closed the front door behind him. He testified that Deputy Kirsch nonetheless entered the home without permission. When Barocio protested and grabbed his cellular telephone to call his lawyer, Deputy Wyatt took away the telephone and handcuffed him. He further testified that he never entered his home with the officers. Barocio admitted that the marijuana was lying on the kitchen counter, but testified that it was not visible from the front door. Barocio further admitted that he had smoked some of the marijuana the night before.

After discovering the bag of marijuana in the kitchen, the deputies obtained a search warrant through Deputy Kevin Montford. Because of statements by Deputy Wyatt, Deputy Montford averred that the officers first saw the marijuana in plain view while standing outside the home. However, this line of sight was later proved impossible, and Deputy Wyatt testified at trial that he did not see the marijuana until after the search warrant was issued. Further, Deputy Wyatt testified that it was Deputy Kirsch who provided the information about the bag of marijuana to Deputy Montford for the search warrant.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex. Crim.App.1993). Accordingly, we give great deference to the trial court's determination of historical facts supported by the record. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford the same amount of deference to the trial court's rulings on "mixed questions of law and fact," such as the issue of probable cause, if the resolution of those ultimate questions turns on evaluation of witnesses' credibility and demeanor. *Id.* If a mixed question of law and fact does *not* turn on an evaluation of credibility and demeanor, we review the ruling de novo. *Id.* Thus, "[w]hen faced with an issue of mixed law and fact, the critical question under *Guz-*

*man* is whether it 'turns' on an evaluation of credibility and demeanor." *Loserth v. State*, 963 S.W.2d 770, 773 (Tex.Crim.App. 1998). A question "turns" on an evaluation of credibility and demeanor where the testimony of one or more witnesses, if believed, is enough to establish what is needed to decide the substantive issue. *Id.*

The decision in this case does not turn on the credibility and demeanor of the witnesses because the testimony, even if entirely believed, is insufficient to justify the warrantless entry into appellant's home. Therefore, we review the trial court's ruling de novo.

### WARRANTLESS SEARCH

■■■ The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution forbid unreasonable searches and seizures. " '(P)hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Spring v. State*, 626 S.W.2d 37, 41 (Tex.Crim.App. 1981) (quoting *United States v. United States Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)); *see State v. Steelman*, 16 S.W.3d 483, 488 (Tex.App.-Eastland 2000), *aff'd*, 93 S.W.3d 102 (Tex.Crim. App.2002) (a private dwelling is a sacrosanct place in search and seizure law). Thus, the Fourth Amendment draws a firm line at the entrance to the house. *Green v. State*, 78 S.W.3d 604, 608–09 (Tex.App.-Fort Worth 2002, no pet.) (citing *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). No evidence obtained in an unreasonable search and seizure may be admitted at trial. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Pamph.2003). A warrantless search is *per se* unreasonable, subject to a few specifically established exceptions. *Reasor v. State*, 12 S.W.3d 813, 817 (Tex.Crim.App.2000). These exceptions are "jealously and carefully drawn." *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Jones v. United States*, 357 U.S. 493, 497, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

■■■ One such exception is a search conducted with probable cause and exigent circumstances, which make obtaining a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim.App.1991). "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Id.* On appellate review, a warrantless search based on probable cause may require evidence of a more "judicially competent or persuasive character" than a search based upon a magistrate's determination of probable cause. *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, facts which might constitute issuance of a warrant for probable cause do not necessarily validate a search made without a warrant. *Id.* "Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (holding that odor of burning opium did not excuse necessity

of obtaining a warrant to search).[1]

In keeping with this rationale, the Texas Court of Criminal Appeals has recently held that "[t]he odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home." *State v. Steelman,* 93 S.W.3d at 108. In *Steelman,* police received a tip that drug dealing was taking place at the defendants' residence. The police knocked on the door and, when one defendant opened the door, smelled the odor of burnt marijuana. *Id.* at 103. As with Barocio, the defendant who answered the door stepped outside. As with Barocio, the police asked the defendant for identification. As with Barocio, when he turned and entered the home, the police entered the home behind him without consent. *Id.* at 104. Once inside, the police arrested the defendant and the other occupants of the home. The court held that the odor of marijuana did not give police probable cause for the arrest. *Id.* at 108. Similarly, in applying *Steelman* to this case, we hold that the odor of marijuana alone did not provide probable cause for the warrantless entry into Barocio's home.

The dissent engages in lengthy commentary about the plain smell of marijuana, citing cases from New Jersey, Wisconsin, Ohio, and California. We acknowledge the academic and judicial debate about the "plain smell" doctrine.[2] Nonetheless, it is merely an academic exercise for an intermediate court to initiate such a debate when the issue has been decided by our state's highest criminal court.

 Further, the dissent devises both probable cause and exigency by pairing the marijuana odor with suspicions that Barocio was a burglar.[3] Certainly, police can enter a home to investigate a burglary-in-progress. *See In re J.D.,* 68 S.W.3d 775 (Tex.App.-San Antonio 2001, pet. denied) (two teens with a rifle seen entering yard from alley; police see signs of burglary at home and hear people within, though no one responded to police's shouts). However, in none of the dissent's cases did the police enter to investigate a burglary *after* detaining the sole suspect.[4] If the officers had articulated facts reasonably showing other persons were in Barocio's home, whether victims or accomplices, no doubt the State would have argued on appeal the emergency doctrine, which is the basis of the cases cited by the dissent.[5]

1. "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." *Johnson,* 333 U.S. at 14, 68 S.Ct. 367; *see Steelman,* 93 S.W.3d at 112–13 (Cochran, J., concurring) (quoting *Johnson*).

2. *See, e.g.,* Michael A. Sprow, Comment, *Wake Up and Smell the Contraband: Why Courts that Do Not Find Probable Cause Based on Odor Alone Are Wrong,* 42 Wm. & Mary L.Rev. 289 (2000). The author largely relies upon cases in which contraband was smelled in cars, and he naively opines, "[W]arrantless searches of a home or other building will not be widespread in a plain smell jurisdiction." *Id.* 315.

3. The dissent invents an all-inclusive burglary investigation. In contrast, the testimony shows that Officer Kirsch's burglary investigation was limited to obtaining Barocio's identification.

4. An investigative detention allows an officer to determine a person's identity or maintain the status quo while the officer obtains more information. *Gaines v. State,* 99 S.W.3d 660, 666 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

5. Officer Kirsch looked through the remainder of the home because "it's just protocol." The dissent airily excuses a total lack of evidence that he reasonably believed others were present in the home. In so doing, the dissent tosses aside search and seizure law, issues an advisory opinion, and permits matter-of-course exigency on the presumption that all suspected burglars are "predators." *Compare United States v. Erickson,* 991 F.2d 529, 533

*See Brimage v. State,* 918 S.W.2d 466, 500–01 (Tex.Crim.App.1994).[6] The dissent's stance also ignores the State's concession at trial that investigation of a possible burglary did not provide officers justification to enter Barocio's home.[7] Coupling odor and burglary suspicions, when the sole suspect has been detained, is simply a red herring.[8]

Finally, the dissent finds exigency in the "likelihood" that the marijuana would have been destroyed if police left to obtain a warrant. Having held there was no probable cause for the warrantless search, we need not address exigency. However, we note that preventing the destruction of evidence or contraband can be an exigent circumstance. *McNairy,* 835 S.W.2d at 107. To show such exigency, there must be evidence that "the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant." *Covarrubia v. State,* 902 S.W.2d 549, 553 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). The dissent reasons that Barocio became aware of police presence when he emerged from his home and might of then disposed of the marijuana if they left to obtain a warrant. We note, however, that the police never left Barocio's home while they obtained a search warrant, which a third officer delivered. During their short wait, the police detained Barocio in the back of a police car. The dissent also reasons that the odor of burnt marijuana indicated that the evidence was in the process of being destroyed. However, "the presence of drugs alone does not give rise to exigent circumstances justifying a warrantless entry and search." *United States v. Howard,* 106 F.3d 70, 73 (5th Cir.1997). There must be facts from which police could have reasonably concluded the marijuana was in danger of destruction. In fact, the officer who delivered the search warrant to Barocio's home testified there was no rush because Barocio had been detained. Lastly, the dissent cannot find exigency through the possible destruction of evidence when police send a defendant inside for identification. Exigent circumstances do not pass Fourth Amendment muster if the police deliberately create them. *United States v. Richard,* 994 F.2d 244, 248 (5th Cir.1993).

The dissent has valiantly attempted to factually distinguish *Steelman* and *Johnson.* However, attempting to factually distinguish *Steelman* from the instant case

(9th Cir.1993) (no search permitted for community caretaking where police peered in burglarized home and observed marijuana plants) *with In re Sealed Case 96–3167,* 153 F.3d 759, 767 (D.C.Cir.1998) (exigency existed because of danger posed by suspected burglar whom police observed force entry and whom they chased up the home's darkened staircase) (both cases cited by dissent).

6. The emergency doctrine allows a warrantless search where police have "reasonable cause to believe that, absent an immediate search, serious bodily harm or death may result." *Brimage,* 918 S.W.2d at 500–01.

7. The State argued that if police smell marijuana while investigating a different crime, police can enter a home based on the odor.

The State concluded, "So then we really have two reasons for the case for them to enter. One, the investigation of the burglary. That doesn't get them in but the odor of marijuana then lets them in the door."

8. The dissent invites us to unnecessarily distinguish particular cases and particular facts. We decline to engage in countless rejoinders. We also decline to release an advisory opinion about whether a car parked with its driver's door open, pry marks on a door, and a surveillance camera give police probable cause and exigency to search *absent* detention of the suspected burglar. Despite citing an "exhaustive" article about burglary as an exigent circumstance, the dissent still fails to provide a single case permitting entry in a home after police detain the sole suspect.

"leaves the people's homes secure only in the discretion of police officers." *Johnson,* 333 U.S. at 13–14, 68 S.Ct. 367. Following *Steelman,* which is the law in Texas, and *Johnson,* from our nation's highest court, we hold there was no probable cause for the warrantless search of Barocio's home.

## INEVITABLE DISCOVERY

■ Although the bag of marijuana was discovered during the officers' improper entry, the State nonetheless contends that it was seized in good faith reliance on a facially valid search warrant issued by a neutral magistrate based on probable cause. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(b) (Vernon Pamph.2003). This argument implicitly asks us to find two things: (1) the warrant was valid despite untruths in the affidavit through which it was procured[9] and (2) its execution would have inevitably led to discovery of the marijuana.

■ The inevitable discovery doctrine is an exception to the federal exclusionary rule by which evidence is admissible if the prosecution can establish that it inevitably would have been discovered by lawful means. *Price v. State,* 93 S.W.3d 358, 370 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (op. on reh'g). However, there is no inevitable discovery doctrine under the Texas exclusionary rule. *State v. Daugherty,* 931 S.W.2d 268, 269 (Tex. Crim.App.1996). "Once the illegality and its causal connection to the evidence have been established, the evidence must be excluded." *Id.* at 270. We thus decline to apply the inevitable discovery doctrine here.

## ATTENUATION OF THE TAINT

■ Lastly, the State contends that any taint caused by the initial, warrantless entry was attenuated by the subsequently procured search warrant. *See Johnson v. State,* 871 S.W.2d 744, 751 (Tex.Crim.App. 1994) (permitting attenuation doctrine under Texas exclusionary rule). The State did not argue the attenuation doctrine at the suppression hearing. It cannot raise this theory for the first time on appeal. *Steelman,* 93 S.W.3d at 106–07; *see Sedani v. State,* 848 S.W.2d 314, 318–21 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd) (op. on reh'g).

## CONCLUSION

Following *Steelman,* we hold that the odor of marijuana did not give deputies probable cause for warrantless entry into Barocio's home. Because the bag of marijuana was the fruit of an illegal search, the trial court should have suppressed evidence of it. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (holding that under the "fruit of the poisonous tree" doctrine, evidence derived directly or indirectly from illegal governmental activity is excluded as trial evidence). Further, evidence about the bag of marijuana may not be admitted under inevitable discovery or attenuation-of-the-taint doctrines. Accordingly, we sustain Barocio's issues, reverse his conviction, and remand to the trial court for further proceedings consistent with this opinion.

EDELMAN, J. concurs in result only.

GUZMAN, J. dissenting.

---

9. Deputy Montford averred that Deputy Wyatt saw the marijuana in plain view while standing on Barocio's front porch. Photographs at trial proved that such a line of sight was impossible, and Deputy Wyatt denied observing the marijuana before the search warrant was issued. Further, Deputy Montford recited that one of the officers observed smoke in the home, which was untrue.

EVA M. GUZMAN, Justice, dissenting.

Though the plurality labors mightily to force this case into the *Johnson/Steelman* framework, those cases stand for the proposition that the odor of illegal narcotics, *standing alone*, does not constitute probable cause to conduct a warrantless search. Here, the plurality refuses to consider the odor of contraband *in conjunction* with other factors tending to establish probable cause. Because here the odor of illegal narcotics does not stand alone, and all the evidence taken together constitutes probable cause and exigent circumstances sufficient to justify the warrantless entry, I would affirm the decision of the trial court.[1] Accordingly, I respectfully dissent.[2]

## I. ANALYSIS

In support of its holding, the plurality places significant reliance on the Court of Criminal Appeals' recent decision in *State v. Steelman*, in which the court stated that "the odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home." 93 S.W.3d 102, 108 (Tex.Crim.App.2002); *see also Dickey v. State*, 96 S.W.3d 610, 613 (Tex.App.-Houston [1st Dist.] 2002, no pet.). In *Steelman*, the court was called upon to decide whether the odor of burnt marijuana emanating from a residence accompanied by an anonymous tip constituted probable cause to believe that "the person who opened the door of the residence had committed an offense in the officers' presence and thus permitted the officers to enter and arrest everyone inside the home." 93 S.W.3d at 103–04. In that case, after receiving an anonymous tip that drug dealing was taking place, the Abilene Police Department sent three officers to Ian Steelman's residence to investigate. *Id.* at 104. At the scene, officers peered through a window and observed four men sitting together in the living room of the residence. *Id.* They did not observe any criminal behavior. *Id.* The officers then knocked on the front door, whereupon Ian "opened the door, stepped outside, and closed the door behind him." *Id.* When the door was opened, the officers immediately detected the smell of burnt marijuana. *Id.* Responding to the officers' request for identification, Ian told them he would have to return inside to retrieve it. *Id.* At that point, he "opened the door, walked back through it, and attempted to close it behind him." *Id.* The officers prevented Ian from closing the door, entered

1. At the hearing on the motion to suppress, the State agreed to stipulate with defense counsel that "the basis for the issuance of the warrant [was] a previous warrantless entry." For purposes of this appeal, I find it unnecessary to deal with the issuance of the subsequent search warrant, as the deputies' warrantless entry was either constitutionally permissible or impermissible the instant it was made. *Stewart v. State*, 681 S.W.2d 774, 776–77 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd); *see also Janicek v. State*, 634 S.W.2d 687, 691 (Tex.Crim.App.1982). The subsequent issuance of a search warrant cannot justify a previous unjustifiable act and make evidence admissible that is otherwise inadmissible. *Stewart*, 681 S.W.2d at 777.

2. The plurality suggests that to find *Steelman* factually distinguishable is to bestow upon law enforcement authorities unbridled discretion to enter people's homes without a warrant. However, this dissent recognizes the error of misapplying or expanding *Steelman* beyond the proposition that the odor of marijuana *standing alone* does not justify a warrantless entry into the home. To proclaim that *Steelman* controls our inquiry is to plainly and steadfastly ignore the clear factual differences between the two warrantless entries. Simply put, the *Steelman* court dealt with the smell of illegal contraband and little else, while in the case at bar, we are confronted with a myriad of circumstances which were neither contemplated nor addressed by the Court of Criminal Appeals in *Steelman*.

the home, and arrested all of the occupants. *Id.*

The trial court, after noting some of the officers' testimony to be "incredible," granted the defendant's motion to suppress. *Id.* at 111 (Cochran, J., concurring).[3] Agreeing with both the trial court and the Eastland Court of Appeals, a majority[4] of the Court of Criminal Appeals found that any evidence resulting from unlawful police conduct should have been suppressed. *Id.* at 110. The court held that "the mere odor of burning marijuana did not give the officers probable cause to believe Ian had committed the offense of possession of marijuana in their presence." *Id.* at 108. In coming to its conclusion, the *Steelman* majority relied on *Johnson v. United States,* in which the Supreme Court held that an untested and uncorroborated tip, coupled with the odor of burning narcotics, did not alone permit officers to enter and search a private residence without a warrant. 333 U.S. 10, 12–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948);[5] *see also Chapman v. United States,* 365 U.S. 610, 613–15, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Pineda v. City of Houston,* 124 F.Supp.2d 1057, 1073 (S.D.Tex.2000). Like *Steelman,* the *Johnson* court confronted "whether it was lawful, without a warrant of any kind, to arrest petitioner and to search her living quarters." *Johnson,* 333 U.S. at 11, 68 S.Ct. 367.[6]

In *Johnson,* the authorities learned from an informant that individuals were smoking opium in a hotel room. *Id.* at 12, 68 S.Ct. 367. Upon arriving at the scene, officers recognized the "distinctive and unmistakable" odor of burning opium. *Id.* The officers knocked on the door, and after a delay and some "shuffling" noises, they demanded entrance. *Id.* at 13, 68 S.Ct. 367.[7] Finding the subsequent search

3. The plurality recites the rule that great deference is given to the trial court's determinations in a ruling on a defendant's motion to suppress. It does not consider however, the distinction the rule creates between *Steelman* and the instant case. In *Steelman,* the trial court granted the defendant's motion to suppress, basing its ruling partly on its disbelief of the officer's testimony. *See Steelman,* 93 S.W.3d at 111 (Cochran, J., concurring). Here, the trial court denied appellant's motion to suppress and to that ruling we must give the appropriate deference. The plurality disregards the trial court's discretion by simply noting that even if the entirety of the officers' testimony is believed, the showing would still be insufficient to justify a warrantless entry in the case at bar.

4. The majority opinion in *Steelman* drew two concurring opinions and three dissenting opinions. 93 S.W.3d at 109–24. Five justices supported the majority opinion and one justice concurred in the result only. *Id.* at 103. Justice Keasler, joined by Justice Hervey, dissented upon the court's denial of the State's motion for rehearing. *See State v. Steelman,* ⸺ S.W.3d ⸺, ⸺, Nos. 1022–00, 1023–00, 2003 WL 190820, at * 1 (Tex.Crim.App.

Jan.29, 2003) (Keasler, J., dissenting on denial of rehearing).

5. *Steelman* concerned a warrantless arrest while *Johnson* dealt with warrantless searches. *See Steelman,* 93 S.W.3d at 108 n. 9; *see also Johnson,* 333 U.S. at 12–15, 68 S.Ct. 367. However, the *Steelman* majority noted the similarity between the two scenarios as "the actual arrest of Steelman took place after the warrantless entry into the residence, which can be thought of as a warrantless search for the person to be arrested." *Id.*

6. The plurality relies heavily on *Johnson* but does not mention that it was decades before much of the U.S. Supreme Court's modern refinements of its Fourth Amendment jurisprudence, including many significant cases dealing with the exclusionary rule and exigent circumstances. *See Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Chimel v. California,* 395 U.S. 752, 774, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

7. Notably, the Court observed that entry by the authorities "was granted in submission to

illegal, the Court noted that the officers should have first obtained a warrant from a neutral and detached magistrate. *Id.* at 13–14, 68 S.Ct. 367. The Court also noted that the issuance of a search warrant might be justified "[i]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance." *Id.* at 13, 68 S.Ct. 367. Finding *Johnson* persuasive, the *Steelman* court affirmed the trial court's granting of the motion to suppress.

The trial court in this case did not have the benefit of the Court of Criminal Appeals' opinion in *Steelman,* as it was released well after the hearing on the motion to suppress and indeed, after the case was submitted to this court. In his brief, appellant invokes the Eastland court's opinion in *Steelman,* and at the hearing on the motion to suppress, he invoked *Johnson,* saying it "squarely decided this issue." However, as discussed below, both *Johnson* and *Steelman* are factually distinguishable. Here, because the odor of marijuana did not stand alone, but was accompanied by other suspicious facts providing both probable cause and exigent circumstances, I would find the warrantless entry constitutionally permissible.

## II. PROBABLE CAUSE

This court has observed that an unauthorized entry into a person's home is the chief evil against which the wording of the Fourth Amendment is directed. *Stewart v. State,* 681 S.W.2d 774, 779 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd). Because the Fourth Amendment primarily protects a person's privacy interest in his home, warrantless entries by police are

presumptively unreasonable. *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Indeed, warrantless searches inside a home are "per se unreasonable" unless they fall into one of a few specifically established exceptions to the general rule. *Pineda,* 124 F.Supp.2d at 1069.

This does not mean that the Fourth Amendment requires police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). To show that a warrantless entry is constitutional, the State must demonstrate probable cause existed at the time the search was made and that exigent circumstances existed which made the procurement of a warrant impractical. *See McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App. 1991); *see also Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Texas Court of Criminal Appeals has expressed the probable cause standard as follows:

> [P]robable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the laminated total. In dealing with probable cause, . . . as the very name implies, we are dealing with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Woodward v. State,* 668 S.W.2d 337, 345 (Tex.Crim.App.1982) (*quoting Smith v. United States,* 358 F.2d 833, 835 (D.C.Cir. 1966) *and Brinegar v. United States,* 338

authority rather than as an understanding and intentional waiver of a constitutional

right." *Johnson,* 333 U.S. at 13, 68 S.Ct. 367.

U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948)) (quotations and citations omitted).

Probable cause is gauged by the objective facts known to the officer at the time of the search. *See Rosalez v. State*, 875 S.W.2d 705, 719 (Tex.App.-Dallas 1993, pet. ref'd). In determining whether probable cause existed at the time of a warrantless entry, we must consider the "sum total of the information available" to the law enforcement officers, including reasonable inferences that could be drawn from that information and any experience in similar operations. *McNairy*, 835 S.W.2d at 106. The officer's subjective reasoning for the search or seizure is not determinate of the outcome. *See State v. Steelman*, 16 S.W.3d 483, 488 (Tex.App.-Eastland 2000), *aff'd*, 93 S.W.3d 102 (Tex.Crim. App.2002).

## A. ODOR OF MARIJUANA

In the case at bar, both officers detected the odor of marijuana. Deputy Kirsch testified he immediately smelled the "strong odor" of marijuana. Deputy Wyatt testified he smelled the marijuana before the door opened, stating:

> It's not necessarily what I observed so much as what I smelt. [W]hile outside you could smell some marijuana but when the defendant opened the door you could smell more marijuana from emitting from inside the house.

Although appellant testified he immediately shut the door upon stepping onto the porch, both deputies testified that the door remained open.

Though its presence alone does not rob a citizen of the constitutional protection against an unreasonable search, law enforcement officers "may rely on a distinctive odor as a physical fact indicative of possible crime." *See Taylor v. United States*, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951 (1932). Through the sense of smell,

individuals "draw factual conclusions about [their] surroundings." *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804, 808 (2000); *see also United States v. Kaplan*, 89 F.2d 869, 870 (2d Cir.1937) ("[s]mell is indeed a sense like any other, and … it remains one of the means by which we apprehend the outside world."). Certainly, a law enforcement officer's use of his sense of smell is no less reliable and indeed, can sometimes be more reliable than the other senses. *See United States v. Borkowski*, 268 F. 408, 412 (S.D.Ohio 1920) ("Sight is but one of the senses, and an officer may be so trained that the sense of smell is as unerring as the sense of sight."); *People v. Bock Leung Chew*, 142 Cal.App.2d 400, 298 P.2d 118, 119 (1956) (finding "no logical distinction … between something apparent to the sense of smell, and the same thing apparent to the sense of sight or to the sense of hearing.").

In the identification of contraband, the sense of smell can be vital to trained investigators. *See Seldon v. State*, 151 Md.App. 204, 216–18, 824 A.2d 999 (Md.Ct. Spec.App. May 29, 2003) ("Knowledge gained from the sense of smell alone may be of such character as to give rise to probable cause for a belief that a crime is being committed in the presence of an officer."). Here, the sense of smell is of particular import because marijuana produces a remarkably unique odor. *See United States v. Pond*, 523 F.2d 210, 213 (2d Cir.1975) ("It cannot be disputed that marijuana has a distinctive pungent odor."); *Mendez v. People*, 986 P.2d 275, 281 (Colo.1999) (emphasizing that "the smell of burning marijuana is sufficiently distinctive as to be readily identifiable to a trained police officer"); *State v. Secrist*, 224 Wis.2d 201, 589 N.W.2d 387, 391 (Wis. 1999) (noting that marijuana produces an "unmistakable" odor) Significantly, shortly after *Steelman*, the Court of Criminal Ap-

peals noted that "[w]hile smelling the odor of marijuana smoke may not be an event normally encountered in daily life, it requires limited, if any, expertise to identify." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App.2002).

The law certainly does not require an officer to ignore an odor that clearly suggests the commission of a crime. *See United States v. Kronenberg*, 134 F.2d 483, 483 (2d Cir.1943) (finding that "it would be absurd to hold, that the sense of smell was not to be relied upon at all"); *Commonwealth v. Stoner*, 236 Pa.Super. 161, 344 A.2d 633, 635 (1975) (noting that it would have been a "dereliction of duty for [an officer] to ignore the obvious aroma of an illegal drug which he was trained to identify."). The smell of marijuana creates an inference of both its immediate presence and its recent use. *See State v. Judge*, 275 N.J.Super. 194, 645 A.2d 1224, 1228 (App. Div.1994). Thus, it prompts a reasonable belief that a controlled substance has been or is being possessed or delivered, or both, and, consequently, that a violation of law has occurred or is occurring. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440, 441–42 (1997).

In *Steelman*, the Texas Court of Criminal Appeals did not hold that the plainly apparent odor of illegal contraband is a nullity to be disregarded by officers standing at the threshold of a private residence. The court simply held that the odor of burnt marijuana, coupled with an anonymous tip of drug dealing, did not give officers probable cause to believe that the person who opened the door had committed an offense in the officers' presence, thereby permitting them to enter and arrest everyone in the residence. *See Steelman*, 93 S.W.3d at 103–04. Taken into

consideration with other facts and circumstances, the odor of marijuana may be considered by officers and the courts in a probable cause analysis.[8] Indeed, the odor of an illegal substance may provide an *element* of probable cause for a search. *Chavez v. State*, 769 S.W.2d 284, 287–88 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). Although the odor standing alone does not provide officers with probable cause or exigent circumstances to justify a warrantless entry, the plain smell of marijuana certainly provides officers with probable cause to believe contraband or evidence of illegality may be found. *State v. South*, 885 P.2d 795, 798–99 (Utah Ct.App. 1994), *rev'd on other grounds*, 924 P.2d 354 (Utah 1996); *State v. Decker*, 119 Ariz. 195, 580 P.2d 333, 336 (1978) ("The odor of burned marijuana was sufficient to provide probable cause to believe that an occupant of the room was smoking marijuana."); *see also Cameron v. State*, —— So.2d ——, ——, CR–01–1845, 2003 WL 569713, at * 4 (Ala.Crim.App. Feb.28, 2003) (holding that "the strong and overwhelming smell of marijuana emanating from the house, combined with [officer's] testimony regarding his ability to identify the distinctive odor of marijuana, established the existence of [officer's] probable cause to believe that contraband was present inside the residence"). Here, the odor of illegal contraband does not in and of itself provide officers with probable cause, however, it is certainly an element of the analysis.

## B. SUSPICIOUS CIRCUMSTANCES

Kirsch and Wyatt accumulated more evidence than that which was detected through their sense of smell. *See Kaplan*,

---

**8.** The plurality dedicates little meaningful discussion to the additional evidence in this case, as noted in the following section.

89 F.2d at 870.[9] According to Kirsch's testimony, they were in appellant's subdivision on "an unrelated burglary investigation" when they "observed a suspicious vehicle." Kirsch described the scene as follows:

> The vehicle was parked illegally facing the wrong way on the roadway. The front door or the driver's side door was standing wide open. [We] [a]pproached the vehicle and observed the ignition keys were still inside the ignition.

Together, the deputies approached the nearest residence—appellant's home. There, they observed both a surveillance camera trained upon the entrance way as well as "pry marks on the door near the locking mechanism." Suspicious of possible criminal activity, the deputies knocked on the door, and for several minutes, there was no response. Wyatt testified he "heard a lot of noise in the residence." When the door finally opened, appellant emerged, whereupon he refused to present identification after repeated requests. Appellant ultimately indicated that his identification was inside the home. Kirsch then directed appellant to enter the home. He testified that he was still investigating a possible burglary, and accordingly, followed appellant into the home.

Here, the probable cause analysis is controlled by the Court of Criminal Appeals' decision in *McNairy*, which the plurality does not see fit to analyze in any significant detail. 835 S.W.2d at 106. In that case, the authorities made a warrantless entry into the defendant's trailer home after detecting the odor of a methamphetamine laboratory *and* hearing people running out the back door of the trailer. *Id.*

at 103. In challenging the constitutionality of the search, the appellant asserted that odor alone could not justify such a warrantless search. *Id.* at 105. In finding probable cause existed at the time of the warrantless entry, the Court of Criminal Appeals examined a host of suspicious factors, including, but not limited to:

> (1) the "unmistakable" odor of a methamphetamine laboratory emanating from appellant's trailer home; (2) the sound of the back door of the trailer flying open and persons running through the brush into a nearby wooded area; and (3) the presence of another methamphetamine laboratory on the same ten acre tract.

*Id.* at 106. The court also looked to the officers' specific training and familiarity with previous methamphetamine laboratory raids. *Id.* Thus, the odor of narcotics, coupled with other facts and circumstances tending to provide probable cause, were sufficient to justify the warrantless entry. *Id.*

Here, Deputies Kirsch and Wyatt encountered suspicious circumstances separate and apart from the unmistakable odor of marijuana, including the unattended vehicle facing the wrong direction with the keys still in the ignition and door ajar, the pry marks on the locking mechanism of the front door, the investigation of another burglary in the subdivision, and a suspect who repeatedly refused requests to provide information. In addition, Kirsch testified that in his experience it "wouldn't be too unusual" for burglars to smoke marijuana while in the house they were burglarizing. Taking these facts and circumstances together, the officers had sufficient

---

9. Observing that the tip was "never substantiated," the *Steelman* majority noted that "a mere anonymous tip, standing alone, does not constitute probable cause." 93 S.W.3d at 108; *Johnston v. State*, 99 S.W.3d 269, 272 (Tex.App.-Texarkana 2003, no pet.). Unlike the officers in *Steelman*, Deputies Kirsch and Wyatt were not responding to an anonymous tip.

probable cause at the time of the initial entry into appellant's home.

## III. Exigency

If probable cause is present, the inquiry becomes whether exigent circumstances existed to obviate the need for a search warrant and justify the initial warrantless entry into appellant's home. *Id.* at 107. The United States Supreme Court has observed:

> [N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *overruled in part on other grounds, Horton v. California*, 496 U.S. 128, 136–41, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

Thus, probable cause must be supported by exigent circumstances to justify the warrantless entry. The Texas Court of Criminal Appeals recognizes two exigent circumstances where an immediate search without a warrant is permissible: (1) where there is a threat to someone's health or safety, (no warrant necessary when police action is to protect or preserve life); and (2) where police reasonably conclude that evidence would be destroyed before they could obtain a search warrant. *McNairy*, 835 S.W.2d at 107; *Torrez v.*

*State*, 34 S.W.3d 10, 15 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In determining whether exigent circumstances exist, the appellate court does not look solely at the subjective reasoning of the officer, but uses an objective standard of reasonableness. *Torrez*, 34 S.W.3d at 15.

### A. Possible Burglary

Kirsch testified that he was investigating a possible burglary of appellant's home when he made the warrantless entry. The possibility that a burglary is in progress or has recently been committed may provide officers with exigent circumstances to justify a warrantless entry. *Brimage v. State*, 918 S.W.2d 466, 501 (Tex.Crim.App. 1994) (*citing United States v. Johnson*, 9 F.3d 506, 509–10 (6th Cir.1993)); *see also In re J.D.*, 68 S.W.3d 775, 780 (Tex.App.-San Antonio 2001, pet. denied); *Medina v. State*, No. 04–98–00696–CR, 1999 WL 1020266, at *4, (Tex.App.-San Antonio Nov.10, 1999, no pet.) (not designated for publication).[10] Because suspects or victims may still be in the residence, and because there is an immediate and urgent need to protect the resident and his property, the warrantless police entry may be justified as exigent depending upon the specific circumstances of the case. For example, police may properly enter to look for other perpetrators or victims. Indeed, as one federal court has observed, it would "defy reason" to force officers to leave the scene of a possible burglary-in-progress to obtain a warrant thereby "leaving the putative burglars free to complete their crime unmolested." *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir.1982).

---

10. For an exhaustive survey of the jurisprudence on the issue of the possibility of a burglary in progress providing exigent circumstances to justify a warrantless entry into a residence, *see generally* Suzanne V. Estrella,

Annotation, *Belief that Burglary is in Progress or has Recently Been Committed as Exigent Circumstance Justifying Warrantless Search of Premises*, 64 A.L.R.5th 637 (1998).

Among the facts tending to illustrate a possible burglary at appellant's home was the suspicious vehicle. *See Reardon v. Wroan,* 811 F.2d 1025, 1030 (7th Cir.1987) (noting that exigent circumstances existed when, among other factors, officers found single car in the driveway of fraternity house at a time of year when the students were on break and burglaries were known to occur more frequently). The pry marks on the locking mechanism of the door also suggested that a burglary might be in progress. *See United States v. Estese,* 479 F.2d 1273, 1274 (6th Cir.1973) (finding exigent circumstances to justify warrantless entry where "pry marks on the door" were observed and the door ajar); *see also United States v. Valles–Valencia,* 811 F.2d 1232, 1235–36 (9th Cir.1987) (finding probable cause to conduct warrantless entry to investigate possible burglary where, among other factors, officers detected odor of marijuana and observed that window screen pried open), *amended on other grounds,* 823 F.2d 381 (9th Cir.1987); *United States v. Dart,* 747 F.2d 263, 267 (4th Cir.1984). The officers were also confronted with an individual who repeatedly refused requests for identification. *See Johnson,* 9 F.3d at 509–10. Furthermore, Kirsch testified that at the time of the warrantless entry into the home, he was still investigating a possible burglary and in his experience as a police officer, bur-

glars sometime smoked marijuana while committing a burglary.

Also, accompanying a burglary in progress is the possibility of additional perpetrators or resident victims. The plurality notes that the officers had not articulated "facts reasonably showing other persons were in Barocio's home" and summarily concludes that "[c]oupling odor and burglary suspicions, when the sole suspect has been detained, is simply a red herring." [11] However, the deputies had no confirmed belief that appellant was the "sole suspect," and thus, it was "appropriate for them to act on the basis of the kinds of risks burglaries normally present." *In re Sealed Case 96–3167,* 153 F.3d 759, 767 (D.C.Cir.1998).[12] Importantly, any failure of the officers to testify to concerns of resident safety or other possible suspects cannot dictate the plurality's holding, as we look to objective standards of reasonableness and not the subjective reasoning of an officer in an analysis of exigent circumstances. Objectively, a reasonable officer would have been aware of the danger and the need to immediately go into the house to eliminate the possibility of other suspects and ensure that no residents were in jeopardy. *Cf. Colburn v. State,* 966 S.W.2d 511, 519 (Tex.Crim.App.1998) (noting that courts employ "an objective standard of reasonableness in determining whether a warrantless search is justified,

**11.** By focusing on the notion that Barocio was "the sole suspect" (a fact confirmed only after the entry at issue), the plurality, perhaps inadvertently, distinguishes *Steelman.* In that case, the court based its holding partially on the fact that the officers, before knocking, saw through a window, four individuals sitting in the residence, although at that time, the officers did not witness any illegal behavior. *Steelman,* 93 S.W.3d at 104. When the officers detected the odor of contraband, they had no idea which individual was engaging in unlawful behavior, as there were multiple persons in the residence. *See id.* at 109. When Ian Steelman emerged from the home,

the officers "certainly had no particular reason to believe that [he] was smoking or possessing marijuana." *Id.* Here, the officers encountered only one individual at the residence when they detected the odor of marijuana and suspected a possible burglary.

**12.** After the fact, however, the plurality has the benefit of the later-acquired knowledge that the residence contained no additional perpetrators or victims in the home. At the time of the warrantless entry, the deputies had no such luxury.

taking into account the facts and circumstances known to the police at the time of the search").

Balancing the interests of the people to be free from unjustified governmental intrusion against society's need to have law enforcement protect citizens from predators, I would find that the evidence of a possible burglary in progress provided officers with exigent circumstances to conduct a warrantless entry. *See United States v. Erickson*, 991 F.2d 529, 533 (9th Cir.1993) ("In a wide variety of contexts, this and other circuits have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances."); *see also People v. Duncan*, 42 Cal.3d 91, 227 Cal.Rptr. 654, 720 P.2d 2, 5–6 (1986).

## B. DESTRUCTION OF EVIDENCE

In addition to the exigency supplied by the officers' belief of a possible burglary, the likelihood of the destruction of evidence in this case also provided officers with exigent circumstances. The need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed. *See United States v. Santa*, 236 F.3d 662, 669 (11th Cir.2000); *Moore*, 734 N.E.2d at 809 ("Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search [of vehicle] may be justified to preserve evidence."). To avail itself of this exception, the State must show the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant. *McNairy*, 835 S.W.2d at 107; *see also United States v. Villabona–Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995); *Williams v. State*, 937 S.W.2d 23, 29–30 (Tex.App.-Houston [1st Dist.] 1996,

pet. ref'd) (en banc) (Mirabal, J., concurring). Factors bearing upon the reasonableness of a warrantless entry premised upon this exception are:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a warrant is sought; (4) information indicating the possessors of the contraband are aware the police are "on their trail"; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking.

*Covarrubia v. State*, 902 S.W.2d 549, 554 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd).

In the instant case, Kirsch testified that "it became evident that there was marijuana recently smoked inside the residence." An odor of marijuana may indicate that evidence of a crime is in the process of being burned and thereby destroyed. *See Mendez*, 986 P.2d at 282; *Decker*, 580 P.2d at 336 ("The smell in this case alone indicated the contraband was being destroyed."); *Vaillancourt v. Superior Court for Placer County*, 273 Cal.App.2d 791, 78 Cal.Rptr. 615, 619 (1969) (noting that the odor of burning marijuana "would also indicate that the evidence was in fact disappearing" suggesting the "imminent destruction of the contraband.").

The mere presence of contraband, however, does not give rise to exigent circumstances. *United States v. Rivera*, 825 F.2d 152, 156–57 (7th Cir.1987); *cf. Price v. State*, 93 S.W.3d 358, 368 (Tex.App.-

Houston [14th Dist.] 2002, pet. ref'd).[13] Nevertheless, while the odor of contraband standing alone might not provide officers with exigent circumstances, the smell of marijuana coupled with appellant's knowledge of the officers' presence creates the sufficient exigency under the specific facts of this case. When appellant emerged from his home, he became aware of the presence of police. He knew, or could reasonably suspect, that the officers had detected the odor of illegal and easily destroyable contraband. *See Haggard v. Commonwealth,* No. 2002–CA–000334–MR, 2003 WL 1948881, at * 1 (Ky.Ct.App. Apr.25, 2003) (not designated for publication) (finding exigent circumstances justified officer's warrantless entry of residence under destruction of evidence exception when occupants were aware of officer's presence and knew he suspected drug activity). At that point, had the officers left to obtain a warrant to search the home, appellant might have anticipated their return and acted quickly to dispose of any incriminating evidence.[14] Under the facts of this case, an officer could reasonably conclude that a suspect would attempt to dispose of the evidence before the police could return with a warrant. *See United States v. Grissett,* 925 F.2d 776, 778 (4th Cir.1991).

Appellant's awareness of the authorities, coupled with the ease with which small amounts of narcotics can be destroyed, establishes the exigency necessary to predicate a warrantless entry. *People v. Baker,* 813 P.2d 331, 333–34 (Colo.1991) (noting that defendant's awareness of the officers' detection of the odor of marijuana should be considered in exigency analysis); *see also United States v. Tobin,* 923 F.2d 1506, 1511 (11th Cir.1991) (finding exigent circumstances where the officers could reasonably conclude from defendant's behavior that they were "either aware or afraid that someone was watching them [and] [d]estruction or removal of ... the narcotics was therefore a possibility").

### Conclusion

Because I find that both probable cause and exigent circumstances justify the warrantless entry in this case, I respectfully dissent.

---

13. This court recently discussed the destruction of evidence exception in *Price v. State,* 93 S.W.3d 358 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). In that case, we held that "[t]o avail themselves of this exception to the knock-and-announce rule, officers must reasonably conclude that the resident has resolved to dispose of the evidence in the event of police intrusion." *Id.* at 368. In criticizing the State's reliance on the exception in that case, we noted that the "police did not see appellant engaged in the act of destroying evidence, nor had they witnessed any specific acts suggesting that destruction was imminent." *Id.* Indeed, the officers in *Price* only suspected that the defendant possessed narcotics on the day of the entry. *Id.* Here,

however, the odor gave police certain knowledge that marijuana was on the premises. Also, though it features a discussion of the destruction of evidence exception, *Price* remains factually and contextually distinguishable from the case at bar as the officers were executing a search warrant and the issue was whether their failure to knock and announce their presence was constitutionally impermissible.

14. The officers' detection of the odor of contraband may support the finding of probable cause for the purposes of the issuance a search warrant. *Johnson,* 333 U.S. at 13, 68 S.Ct. 367; *Pineda,* 124 F.Supp.2d at 1073.