Affirmed and Memorandum Opinion filed February 1, 2007








Affirmed and Memorandum Opinion filed February 1, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01022-CR

____________

 

ROBERT LYNN BROWN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1013109

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Robert Lynn Brown, plead guilty to the
aggravated robbery of Jamie Melchor and was sentenced to confinement for
fifteen years in the Texas Department of Criminal Justice, Institutional
Division.  In two points of error, appellant claims the trial court erred in
denying his motion to suppress evidence and his motion to suppress oral
statements.  We affirm.








Factual and Procedural Background

On the morning of December 8, 2004, Deputy Victor Zigmont
of the Harris County Sheriff=s Department responded to a call from J.C.
Rutherford, a resident of northeast Harris County.  Rutherford stated that two
men named ABobby@ and ARyan@ had come to his
home and accused him of breaking into their nearby residence.  Rutherford told
Zigmont that ABobby@ and ARyan@ had stolen
property, including stolen vehicles and license plates from stolen vehicles, at
their residence.  Zigmont took Rutherford to a residence on Spicewood Lane,
where ABobby@ and ARyan@ were alleged to
live.  Rutherford found license plates on the property and showed them to
Zigmont.  Zigmont determined that one of the license plates belonged to a
stolen Chevrolet Suburban.  Zigmont also observed one of the windows on the
front of the residence was broken.  However, the opening in the broken window
was not large enough for a person to pass through. 

Also on December 8, Deputies Gregg Board and Jesse Aranda
went to the same residence on Spicewood Lane to execute multiple warrants for
the arrest of Christopher Moak.  When the officers arrived, they observed the
back door was open and a window was unsecured.  Board and Aranda entered the
rear of the residence and determined that no burglary was in progress at that
time.  While the officers were at the location, they received information from
Rutherford that an occupant of the Spicewood residence might be driving a
stolen Chevrolet Suburban.  Board and Aranda believed that Moak was the owner
and occupant of the Spicewood residence.








On December 9, 2004, Deputy Board returned to the Spicewood
residence to execute arrest warrants for Moak.  Board observed the glass in the
front window of the residence was completely broken out, which was
significantly different from the condition he had seen the prior day.  A
Chevrolet Suburban with no license plates was backed into the driveway of the
residence.  Board checked the vehicle identification number (AVIN@) on the Suburban
and learned that the vehicle had been reported stolen.  Board suspected a
burglary was in progress at the residence and called for the assistance of
other officers.  Board entered the Suburban and found appellant=s wallet and
cellular telephone, neither of which contained any information indicating
appellant lived at the Spicewood residence.  A purse belonging to Susan Lopez
was also recovered from the Suburban.  The purse contained a checkbook
belonging to Megan Goodman, the girlfriend of the complainant, Jamie Melchor. 

Additional officers arrived at the scene and secured the
perimeter of the residence.  The officers heard movement inside the residence
and repeatedly instructed the occupants to come outside.   The officers
observed Susan Lopez, who began to exit the residence, but instead walked back
down a hallway and into a bedroom. Deputy Board contacted his supervisor,
Sergeant Steubing, and stated that he believed a burglary was in progress at
the residence.  Board informed Steubing that a stolen vehicle was backed into
the driveway, the picture window on the front of the residence had been broken
out, and the people inside the residence refused to come out.  Steubing
instructed Board to enter the residence through the broken window.  

The officers entered the residence and found appellant and
Lopez in a bedroom.  A loaded pistol-grip shotgun was lying on the bed near
appellant. It was subsequently determined that the shotgun had been stolen, and
the same type of weapon had been used to commit an aggravated robbery involving
Jamie Melchor.  It was also later determined that the residence on Spicewood
Lane was owned by appellant=s mother and leased to appellant by his
mother.








Appellant was taken into custody and advised of his Miranda[1]
rights.  Deputy Board transported appellant to the police station. While
being transported, appellant sua sponte stated that he bought the
Suburban for $500; he thought the VIN plate on the vehicle had been changed;
and the vehicle would not show up as having been stolen.  Appellant further
stated that he Awas going to take the rap for all this@ because his wife
was a good person.  After arriving at the police station, appellant was
interviewed by Houston Police Officer David Pena, Jr., who was investigating
the aggravated robbery of complainant, Jamie Melchor.  Appellant made
additional statements to Officer Pena.     

On February 22, 2005, a Harris County grand jury indicted
appellant for the aggravated robbery of Jamie Melchor.  Appellant filed a
motion to suppress evidence and a motion to suppress oral statements.  On
September 16, 2005, the trial court held a suppression hearing and considered
both of appellant=s motions.  At the conclusion of the
hearing, the trial court denied appellant=s motion to
suppress evidence and denied appellant=s motion to
suppress oral statements with regard to statements made by appellant to Deputy
Board.  On September 21, 2005, appellant changed his plea from not guilty to
guilty.  Appellant was convicted of aggravated robbery and sentenced to fifteen
years= confinement. 
This appeal followed.  

Standard of Review

When reviewing a trial court=s suppression
ruling, we give almost total deference to the trial court=s determination of
historical facts that the record supports.  Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  We afford the same degree of deference to a
trial court=s ruling on mixed questions of law and fact when the
resolution of the ultimate question turns on an evaluation of credibility and
demeanor of witnesses.  Id.  We review de novo mixed questions of
law and fact when the resolution of the issue does not turn on an evaluation of
credibility and demeanor.  Id.  During a suppression hearing, the trial
court is the sole judge of the credibility of witnesses and the weight to be
given their testimony.  Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim.
App. 2000).  We must sustain the trial court=s ruling if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996).








Analysis

I.
Motion to Suppress Evidence

In his first point of error, appellant argues the trial
court erred in denying his motion to suppress evidence because the police
entered his house without a warrant, probable cause, or exigent circumstances
in violation of his Fourth Amendment rights.  The State argues the police
officers who entered the residence had probable cause to believe a burglary was
in progress, and exigent circumstances justifying entry into the residence also
existed based upon the reasonable belief that a burglary was in progress.  

The Fourth Amendment prohibits the warrantless entry of a
residence by police without probable cause and exigent circumstances.  Parker
v. State, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006).  It is undisputed
that the police did not have a warrant to search the premises.  Therefore, we
must determine whether, under the facts of this case, the police had probable
cause and exigent circumstances to enter appellant=s residence
without a warrant.

A. Did the police have probable cause to enter the
Spicewood residence?

Probable cause is the accumulation of facts which, when
viewed in their totality, would lead a reasonable police officer to conclude,
with fair probability, that a crime has been committed or is being committed.  Id.
at 599.  Probable cause to search exists when reasonably trustworthy facts and
circumstances within the knowledge of the officer on the scene would lead a man
of reasonable prudence to believe that the instrumentality of a crime or
evidence of a crime will be found.  Id. at 597.   

When the police decided to enter appellant=s residence
without a warrant, the following facts were known to them:

(1) The glass was completely broken out of a window on the
front of the residence, more so than it had been on the previous day.  








(2) A Chevrolet Suburban was backed into the driveway of
the residence, and the vehicle had no front or back license plates.  

(3) A check of the Suburban=s VIN indicated
that the vehicle was stolen.  

(4) A wallet containing appellant=s birth
certificate and social security card was found in the Suburban.  Nothing in the
wallet indicated appellant lived at the residence.

(5) A purse belonging to Susan Lopez was found in the
Suburban.  The purse contained a checkbook that belonged to Megan Goodman.  

(6) Before the officers entered the residence, they heard
movement inside the residence and repeatedly instructed the occupants to come
outside. 

(7) Susan Lopez began to walk out of the residence, but
then walked back down a hallway.  

Under factually similar circumstances, the Fourth Court of
Appeals held that police had probable cause to believe a burglary had been
committed.  See In re J.D., 68 S.W.3d  775, 779B80 (Tex. App.CSan Antonio 2001,
pet. denied).  In In re J.D., police responded to a report that two
juveniles had been seen carrying a rifle in the vicinity of an elementary
school.  Id. at 779.  A witness at the scene told police that the
juveniles had entered a nearby residence.  Id.  Two officers approached
the residence and heard noises coming from within.  Id.  The officers
observed that the front door had been tampered withCthe screen on the
door had been torn, a window was broken, and the door was ajar.  Id. 
Suspecting a burglary was in progress, the police pounded on the front door and
instructed the occupants to come outside.  Id.  When no one responded,
the police entered the residence.  Id. at 780.  The court of appeals held
that police had sufficient probable cause to search the residence based on
facts indicating a burglary had been committed.  Id. at 779B80. 








Similarly, in the instant case, police observed a window on
the front of the residence was completely broken out, more so than it had been
on a previous day.   The police heard noises coming from within the residence
and repeatedly instructed the occupants to come outside.  While looking through
the broken front window, Deputy Board saw Susan Lopez inside the residence. 
Despite repeated instructions by police, occupants of the residence refused to
come outside.  The police were also aware that a stolen Chevrolet Suburban was
backed into the driveway.  We conclude that the facts known by the officers at
the scene were sufficient to lead a reasonable police officer to conclude, with
fair probability, that a burglary had been committed or was being committed.  See
In re J.D., 68 S.W.3d at 779B80.  Therefore,
the police had probable cause to search the Spicewood residence. 

B. Were there
exigent circumstances justifying the warrantless entry of the Spicewood
residence by police? 

Exigent circumstances are circumstances which justify the
immediate need to enter a residence without first obtaining a search warrant.  Parker,
206 S.W.3d at 597.  A variety of situations may place a police officer in
circumstances in which a warrantless entry is viewed as reasonable.  McNairy
v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991).  Situations creating
exigent circumstances include danger to the officer or victims, an increased
likelihood of apprehending a suspect, or the possible destruction of evidence. 
Id.  The same facts which give rise to probable cause may also be
relevant to an analysis of exigent circumstances.  Parker, 206 S.W.3d at
600B01. 








In Barocio v. State, 158 S.W.3d 498, 499B500 (Tex. Crim.
App. 2005), the Court of Criminal Appeals held that the possibility a burglary
is in progress or has been recently committed may provide officers with exigent
circumstances to justify a warrantless entry of a residence.  In Barocio,
two sheriff=s deputies noticed an illegally parked car, with the
door open and the keys in the ignition, in front of a house.  Id. at
498.  When they approached the residence to investigate, they observed pry
marks on the front door lock.  Id.  The deputies knocked on the front
door.  Id.  While waiting for someone to answer the door, they heard
loud noises coming from within the residence and smelled burnt marijuana.  Id.
 The defendant answered the door and was unable to provide identification. 
Id. at 499.  At the suppression hearing, one of the deputies testified
he followed the defendant into the residence to investigate the odor of
marijuana and the possibility that a burglary was in progress.  Id.  Under
these circumstances, the court held exigent circumstances existed based on the
officers= reasonable belief
they were investigating a burglary and that other suspects might be inside the
residence.  Id.  The court reasoned: 

Because suspects or victims may still be in the residence, and because
there is an immediate and urgent need to protect the resident and his property,
the warrantless police entry may be justified as exigent depending on the
specific circumstances of the case.  For example, police may properly enter to
look for other perpetrators or victims.  

Id. at 500
(quoting Barocio v. State, 117 S.W.3d 19, 33 (Tex. App.CHouston [14th
Dist.] 2003), rev=d, 158 S.W.3d 498
(Tex. Crim. App. 2005) (Guzman, J., dissenting)).  

In the instant case, as in Barocio, evidence
introduced at the suppression hearing shows that the police reasonably believed
they were investigating a burglary and suspects might be inside the residence. 
The broken window on the front of the residence, like the pry marks on the door
lock in Barocio, is an indication of forced entry.  The stolen Suburban
backed into the driveway is further evidence of foul play.  A search of the
purse and wallet found inside the Suburban yielded no indication that the
driver of the vehicle resided at the Spicewood residence.  








The State introduced evidence of an urgent need to protect
the police and potential victims within the residence.  Deputy Board testified
he heard noises coming from within the residence and saw Susan Lopez through
the window.  However, the occupants of the residence refused to respond to
repeated commands to come outside.  Board also testified he was concerned that
occupants of the house might be armed, and that police had revealed their
presence and location by issuing verbal commands.  Board testified: AIf it was a
burglary and they=re in there, there is no telling if they=re armed or what
they are going to do in the house now.  We=ve got the house
perimetered [sic] at that time.  We don=t want to give
them the chance.  They know where we=re at.@  Under these
circumstances, a reasonable police officer could have believed a burglary was
in progress and there was an immediate need to enter the residence to apprehend
suspects and protect the police and the occupants of the residence. 

Appellant claims Barocio is factually
distinguishable from his case because, unlike Barocio, the police were
on scene for approximately one hour before entering his residence. Appellant=s argument fails
to acknowledge that the investigation conducted by the police, prior to
entering the residence, led to their knowledge of facts constituting exigent
circumstances.  Board testified that he checked the VIN on the Suburban and
called dispatch to determine if the vehicle was stolen.  He also searched the
wallet and purse found in the Suburban and saw no indication that the occupants
of the Suburban lived in the residence.  Board called for the assistance of
other officers, and attempted to make contact with the occupants of the
residence.  Finally, Board saw Susan Lopez through the window and decided to
enter the residence.  Here, as in Barocio, the police entered appellant=s residence when
they became aware of exigent circumstances justifying a warrantless entry.

Taking into account all the information known to the police
at the time they entered appellant=s residence, we
hold that exigent circumstances justified the warrantless entry of the
residence.  Because we find both probable cause and exigent circumstances,
appellant=s first issue is overruled.  

II.
Motion to Suppress Oral Statements








In his second point of error, appellant argues the trial
court erred in denying his motion to suppress oral statements made by appellant
to Detective Pena because the statements were the product of custodial
interrogation and were not recorded as required by article 38.22 of the Texas
Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 38.22 ' 3. (Vernon 2005). 
In response, the State argues that the trial court issued an oral ruling on the
record suppressing appellant=s oral statements to Officer PenaCthe exact relief
sought by appellant on appeal.  Therefore, the State contends, appellant=s second point of
error should be overruled as moot.  We agree with the State.

Appellant=s motion to suppress oral statements
argues broadly that Athe oral statements of the defendant@ should be suppressed.  Evidence at
the suppression hearing shows that appellant made oral statements to Deputy
Board, while being transported to the police station, and to Detective Pena,
after arriving at the police station.  Appellant=s motion to suppress oral statements
does not distinguish between the statements made by appellant to Deputy Board
and the statements made by appellant to Detective Pena.  However, appellant=s argument on appeal is expressly
limited to the trial court=s ruling regarding the suppression of statements made by
appellant to Detective Pena. 

On September 16, 2005, the trial court conducted a
suppression hearing and considered both of appellant=s motions;
specifically, appellant=s motion to suppress evidence and
appellant=s motion to suppress oral statements.  Deputy Board gave the following
testimony at the suppression hearing regarding the spontaneous statements made
by appellant to Deputy Board while en route to the police station:[2]

State=s counsel:         Did
you Mirandize him after he was placed into custody?

 

Deputy Board:           He was Mirandized immediately.

 








State=s counsel:         At
that time did you ask him questions about the Suburban that was at the
Spicewood address?

 

Deputy Board:           I didn=t ask him specific questions about it, but when we
were en route to the station, he made comments about it. 

 

State=s counsel:         What
did he say to you?

 

Deputy Board:           He told me that he had
purchased the Suburban for $500 and he thought the VIN plate had been changed
on it and that it would not show stolen.

 

State=s counsel:         You
said he did not answer questions but made comments?

 

Deputy Board:           I wasn=t asking him questions because the HPD detective was
coming to the station and I was not doing a follow-up in this case.

 

State=s counsel:         So
tell me the circumstances wherein he made the statements to you.  Where were
you at [sic]?  Where was he?

 

Deputy Board:           We were driving to the police
station in the police car when he made the statement.  It all started off when
he made the statement: I=m going to take the rap for all this because my wife
is a good person.  

 

At the conclusion
of the suppression hearing, the trial court made the following oral rulings on
the record:[3]









The Court:                  Mr. Brown, I will deny
your motion to suppress.

 

Defense counsel:      Is that also as to the --

 

The Court:                  The oral statements,
anything that is not as a result of interrogation, as well.

 

Defense counsel:      So we are clear, are you saying
that those are also the questions of Detective Pena?

 

The Court:                  No, no.

 

Defense counsel:      Because there is [sic] different
statements.

 

The Court:                  No, no.  I=m talking about what he said the defendant volunteered
to him in the car on the way that were not as a result of the questions.  I=m not talking about anything else.  

 

Based on the transcript of the suppression hearing, we find
that the trial court denied appellant=s motion to suppress
oral statements only with regard to statements made by appellant to Deputy
Board while being transported to the police station.  Therefore, the trial
court implicitly granted appellant=s motion to
suppress his unrecorded oral statements to Officer Pena.  See Tex. R. App. P. 33.1(a)(2)(A).  That
ruling made appellant=s point of error regarding the Pena
interrogation moot.  Accordingly appellant=s second point of
error is overruled.

 

 

 

 








Conclusion

Having considered and overruled each of appellant=s points of error,
we affirm the judgment of the trial court.

 

 

 

 

/s/      John S.
Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed February 1, 2007.

Panel consists of Justices
Anderson, Hudson, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 

 









[1]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.
1602, 16 L.Ed.2d 694 (1966).





[2]  The testimony of Deputy Board is included herein
because it provides the necessary context for a correct interpretation of the
trial court=s oral ruling.  That is, we use his testimony as a
foil to emphasize the implicit ruling of the trial court.  





[3]  On September 16, 2005, the trial court signed a
written order denying appellant=s motion to
suppress evidence.  However, the clerk=s
record does not contain a written order granting or denying appellant=s motion to suppress oral statements.  Therefore, we
look to the transcript of the suppression hearing to determine the trial court=s order regarding appellant=s motion to suppress oral statements.