Angel **RESENDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–05–00098–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 30, 2007.

Supplemental Opinion Overruling
Rehearing May 29, 2008.

316

Kenneth E. Goode, Houston, for appellant.

Keisha L. Smith, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## SUBSTITUTE MAJORITY OPINION

JOHN S. ANDERSON, Justice.

We overrule the State's motion for rehearing, withdraw our previous opinion, and issue this substitute opinion in its place.

Appellant, Angel Resendez, pleaded guilty to the murder of Amanda Garza, and the trial court assessed punishment at ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction in one point of error. He asserts the trial court abused its discretion by denying the motion to suppress his unwarned videotaped confession to murder. The issue in this case is whether appellant was in custody during his interrogation on September 2, 2003, thus triggering his right to *Miranda*[1] warnings. Because we conclude appellant was in custody, we reverse and remand for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2003, appellant and a group of friends, including complainant Amanda Garza, drank a considerable amount of alcohol at a nightclub. That night, after the nightclub closed, the group went to a hotel and continued drinking. Appellant called his friend, Steve Perez, because appellant and Garza needed a ride

---

1. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

home.[2] By the time Perez arrived, Garza was extremely intoxicated and got into the backseat of Perez's car. Perez asked appellant for permission to have sex with Garza, and appellant approved. Perez asked appellant to drive them to appellant's house, and then Perez would take Garza home. Perez then climbed into the backseat and proceeded to have sex with Garza. After several minutes, Garza began screaming and striking Perez, and she told appellant to pull over and let her out, which he did. By this time, appellant was near his home. Garza got out of the car, began to walk away, and shouted obscenities at Perez, threatening to report the assault to the police.

The exact sequence of events following Garza's exit from the vehicle is unclear because appellant gave two different statements to police regarding the events that evening. In the first statement, appellant claimed he insisted on walking Garza to his home, but Perez did not want her to tell anyone what happened. Perez followed appellant and Garza in the car for a few feet, got out of the car, and shot Garza once in the head. Perez threatened to shoot appellant and told appellant to get in the car. Perez then shot Garza three more times. Appellant claimed to have no prior knowledge of a gun in the car. In the second statement, however, appellant claimed he did know about the gun because Perez told appellant to remove the gun from the glove compartment and place it under the seat, so that if they were stopped by police on the way home, the police would not see the gun when they retrieved their proof of insurance. In the

second statement, appellant described his actions after Garza got out of the car: he got angry; "freaked;" grabbed the gun from under the seat; and shot Garza once in the head. Perez then took the gun from appellant and shot Garza three more times. Appellant later claimed he changed his story the second time because he was being threatened by Perez and Perez's friends and thought that if he took partial responsibility for what happened, his family would be protected.

Appellant gave his first videotaped statement on August 31, 2003. Prior to this first videotaped statement, police gave appellant *Miranda* warnings. After the first statement, appellant agreed to stage a recorded phone conversation with Perez.[3] Police then became suspicious of appellant's involvement because Perez implicated appellant in the shooting. On September 2, appellant agreed to take a polygraph test, which he took and failed. At this point, he was questioned and videotaped a second time, and he eventually confessed to shooting Garza with the first of the four shots fired. During the second videotaped statement, appellant was not given any *Miranda* warnings. Appellant was arrested sometime later that day for Garza's murder.

Appellant twice moved to suppress his second unwarned statement, once on September 19, 2003, and again on October 29, 2004. After filing the second motion to suppress but before his trial, appellant testified against Perez at Perez's trial on November 3, 2004. Appellant testified about what he said to police in his two

---

**2.** Perez was with the group at the club but did not make it to the hotel afterwards, either because he was tired or because he got separated from the group.

**3.** The exact content of any audiotaped conversations and their value to police is unclear.

Appellant claims he gave multiple tapes to police on which Perez admitted shooting Garza. The State alleges appellant turned over only one tape, which contains no clear admissions by Perez that would clear appellant of any involvement.

statements. Appellant testified that the reason he changed his story and admitted shooting Garza was because he felt threatened by Perez, but his first statement was factually correct.

At the suppression hearing on November 8, appellant argued his second statement should be suppressed because it was not given voluntarily and police did not give him *Miranda* warnings preceding a custodial interrogation. The State argued in response that *Miranda* warnings were not required because the interrogation was not custodial, and the statement was given voluntarily. Perez's and appellant's trials both took place in the same trial court and were presided over by the same judge. At appellant's suppression hearing, the trial court took judicial notice of appellant's testimony in Perez's trial, specifically that he did not hear appellant testify the statement was not given voluntarily. The trial court denied appellant's motion to suppress. Appellant then pleaded guilty and agreed to a pre-sentence investigation (PSI). After reviewing the results of the PSI and victim impact testimony, the trial court assessed punishment at ninety-nine years' confinement.

## DISCUSSION

### I. *Waiver*

As a preliminary matter, the State contends appellant waived his right to appeal the trial court's denial of the motion to suppress appellant's second videotaped statement when appellant pleaded guilty. We disagree. Both bargaining and non-bargaining defendants can appeal rulings on written, pre-trial motions and jurisdictional issues. *Monreal v. State,* 99 S.W.3d 615, 620 (Tex.Crim.App. 2003); *see* TEX.R.APP. P. 25.2. A valid waiver of appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing without the consent of the

trial court. *Monreal,* 99 S.W.3d at 622. In determining whether defendants should be bound to their waivers of appeal, a court first must determine whether the waiver is valid, which requires a finding that the waiver was knowingly, voluntarily, and intelligently made. *Id.* at 621. However, a waiver of a right to appeal is invalid, and therefore not made knowingly, voluntarily, and intelligently, if it is entered before the defendant is aware of the consequence of his plea. *See Tufele v. State,* 130 S.W.3d 267, 270 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

Here, appellant twice filed a written pre-trial motion to suppress his second videotaped statement. After the trial court denied appellant's motion, appellant pleaded guilty. When making his plea, appellant signed a plea form which purportedly waived his right to appeal. The context of that form implies there was an agreement as to punishment, which there clearly was not; rather, appellant only agreed to have punishment evidence presented to the trial court via a PSI report. Further, the trial court certified appellant's right to appeal and noted this is not a plea bargain case. *See Alzarka v. State,* 90 S.W.3d 321, 324 (Tex.Crim.App.2002) (holding a trial court that certifies a defendant's right to appeal directly contradicts and rebuts any presumption raised by the terms of the boiler-plate language in a plea form signed by the defendant and reflects the defendant did not waive appeal). Appellant did not knowingly, voluntarily, and intelligently waive his right to appeal because punishment had not yet been assessed. Thus, appellant has not waived his right to appeal the point of error he raises in this appeal.

### II. *Miranda Warnings Required During Custodial Interrogation*

In appellant's argument on the merits, he contends the trial court erred in deny-

ing his motion to suppress his second videotaped statement. Appellant makes multiple arguments in support of his contention.

### A. Standard of Review

■■■ When reviewing a trial court's suppression ruling, we give almost total deference to the trial court's determination of historical facts that the record supports. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We afford the same degree of deference to a trial court's ruling on mixed questions of law and fact when the resolution of the ultimate question turns on an evaluation of credibility and demeanor of witnesses. *Id.* We review *de novo* mixed questions of law and fact when the resolution of the issue does not turn on an evaluation of credibility and demeanor. *Id.* During a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex.Crim.App.2000). We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

We will not disturb the trial court's findings if they are supported by the record. *Id.* If the trial court does not make explicit findings of fact, we will assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App.2006).

During the suppression hearing, appellant's counsel argued to the trial court appellant may have voluntarily gone to the police station to talk to police, but at some point while there, his interrogation turned *custodial* and was no longer voluntary, re-

quiring police to give appellant *Miranda* warnings. Appellant's counsel argued that after appellant took and failed a polygraph examination, he was interrogated at some length. Then, appellant and police moved to another room where the second videotaped statement was made, which appellant contends only contains questions geared toward verifying the earlier confession. The parties then argued to the trial court whether it should consider appellant's prior testimony in Perez's trial, specifically where the prosecutor asked appellant if his statement was given freely and voluntarily, whether he was shown the exit door of the room, or whether he was offered drinks or coerced by police. The trial court took judicial notice of appellant's testimony from Perez's trial and made it part of the record in this case. No further discussion occurred about the statement allegedly given during the period in between the polygraph examination and the second videotaped statement, and no other evidence was admitted during the hearing. The trial court denied the motion to suppress, stating it did not recall hearing any testimony by appellant that his confession was not voluntarily made.

### B. Judicial Notice of Prior Testimony

■■■ In the issue raised before this court, neither party addresses in their appellate briefs whether the trial court's decision to take judicial notice of appellant's prior testimony in Perez's trial was appropriate. The parties only ask this court to consider whether appellant's confession was voluntary or custodial without regard to *Miranda* warnings. Because no other evidence was admitted at the suppression hearing, we first consider whether the trial court correctly took judicial notice of appellant's prior testimony.[4]

---

4. Appellate courts in Texas have broad discretion to address unassigned error in criminal

During the suppression hearing, the trial court declared it was using appellant's prior testimony in Perez's trial to rule on whether to grant or deny appellant's motion to suppress. The parties presented no other evidence at the hearing. During Perez's trial, appellant was only partially represented by counsel, and from the record of his testimony at the prior proceeding, which was included in our appellate record, appellant would not re-enter the courtroom after a break in testimony because his counsel was not present. The trial court then instructed the bailiff to bring appellant into the courtroom to continue his testimony regardless of whether his trial counsel was present because appellant was a witness during that proceeding. Appellant did not make a complaint on the record at Perez's trial or during his trial for this offense, but that decision by the trial court, coupled with the court's decision to take judicial notice of the same testimony, is problematic.

■■■■ Texas Rule of Evidence 201 governs the trial court's ability to take judicial notice of adjudicative facts not subject to reasonable dispute. *See* Tex.R. Evid. 201(b); *Garza v. State*, 996 S.W.2d 276, 279 (Tex.App.-Dallas 1999, pet. ref'd). A judicially noticed fact is not subject to reasonable dispute if it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resorting to resources whose accuracy cannot reasonably be questioned. Tex.R. Evid. 201(b). A trial court may take judi-

cial notice of its own orders, records, and judgments rendered in cases involving the same subject matter and between practically the same parties. *Wilson v. State*, 677 S.W.2d 518, 523 (Tex.Crim.App.1984). A court, however, may not take judicial notice of records of another court. *Turner v. State*, 733 S.W.2d 218, 222 (Tex.Crim. App.1987). We decide this issue based on whether appellant's prior testimony was capable of accurate and ready determination by resorting to resources whose accuracy cannot reasonably be questioned. We make this determination in light of the trial court's pronouncement that it did not hear appellant, during his prior testimony, deny the fact that his second statement was voluntary.

The issue of whether it is appropriate for a trial court to take judicial notice of testimony from another defendant's criminal trial in order to resolve an issue in a later trial is complex. The Dallas Court of Appeals held in *Garza v. State* that a trial court erred when taking judicial notice of testimony from a co-defendant's separate trial, which was used to determine whether evidence in the defendant's trial was admissible, because the facts judicially noticed were not capable of accurate and ready determination. 996 S.W.2d at 279–80. In *Garza*, the facts judicially noticed were vigorously disputed by the defendant at his trial. *Id.* at 280. Judicial notice of facts should be justified by a high degree of indisputability, and because the facts at issue here were not of that character, the trial court erred in taking judicial notice of

cases. *Carter v. State*, 656 S.W.2d 468, 469 (Tex.Crim.App.1983). "Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute." *Id.*; *see also Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990); *Guardiola v. State*, 20 S.W.3d 216, 224 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (addressing unassigned

error where fundamental fairness and considerations of due process require the court to do so). An appellate court may be obligated to assign error and request briefing when addressing novel constitutional issues, but many, if not most, errors prompting *sua sponte* appellate attention need not be assigned. *Pena v. State*, 191 S.W.3d 133, 136 (Tex.Crim.App.2006).

the testimony from which those facts were derived. *See id.*

 Assertions made by an individual, even under oath, are generally not the type of facts capable of accurate and ready determination by a source whose accuracy cannot reasonably be questioned. *Id.* at 279–80. The facts necessary to support a motion to suppress evidence are not facts a trial court should judicially notice. *See Alvarez v. State,* No. 03-01-00532–CR, 2002 WL 463278, at *1 n. 1 (Tex.App.-Austin March 28, 2002, pet. ref'd) (not designated for publication) (reasoning in part facts necessary to support a motion to suppress evidence should be easily determinable with certainty). While a court may take judicial notice of the existence of the testimony in a co-defendant's trial, a court may not take judicial notice of the truth of the factual content of that testimony because its accuracy *can* reasonably be questioned. *See Jackson v. State,* 139 S.W.3d 7, 21 (Tex.App.-Fort Worth 2004, pet. ref'd) (holding a court may judicially notice the existence of an affidavit in its file, but it may not take judicial notice of the truth of the factual contents contained therein). In fact, an outcome of the suppression hearing should have been a determination of the facts and circumstances surrounding appellant's second videotaped statement to police, and had the court made such a determination, that determi-

nation would have shed light on the accuracy of the factual content of appellant's prior testimony. Moreover, a fact is not capable of accurate and ready determination simply because a trial judge remembers a witness testified to the fact at trial. *Garza,* 996 S.W.2d at 280 (citing *Wilson v. State,* 677 S.W.2d 518, 524 (Tex.Crim.App. 1984) (holding the "function of judicial notice is not coextensive with the personal knowledge of the individual judge")). Similarly in a civil context, this court has held prior testimony may not be used in a later trial unless that testimony is admitted into evidence at the later trial. *Villarreal v. Sw. Distrib. Co.,* No. 14-95-00135–CV, 1996 WL 460195, at *2 (Tex.App.-Houston [14th Dist.] Aug. 15, 1996, no writ) (not designated for publication); *Traweek v. Larkin,* 708 S.W.2d 942, 946–47 (Tex.App.-Tyler 1986, writ ref'd n.r.e.) (rejecting trial court's judicial notice of testimony from another trial).

 Here, the facts the trial court utilized to determine whether appellant's second statement was made while he was in custody are disputed by appellant. Contrary to the State's assertion on rehearing, appellant did not treat his prior testimony as if it had been admitted into evidence in this case, and appellant did in fact object to the trial court's taking judicial notice of his prior testimony.[5] The testimony the trial court judicially noticed was inherently

---

5. We find the following statements by appellant's trial counsel adequate to preserve error regarding the taking of judicial notice of appellant's testimony at Perez's trial:

> [counsel]: Simply because Mr. Resendez testified at Mr. Perez' trial, I don't think that we should be bootstrapped to say, therefore, the fact that you were not Mirandized[,] there may have been some question with regard to the voluntariness of your confession, therefore, we are simply going to overrule your motion and allow the confession in.

> [The Court]: As I recall, I can take judicial notice. I tried the case. There was never any complaint that this defendant made on the stand or the officers that he had any problem with about any issue or whether he was there freely, voluntarily, they coerced him, threatened him or promised him anything. I didn't hear any testimony of that whatsoever, so I will deny your Motion to Suppress Mr. Resendez' statement.

> [counsel]: Just for purposes, obviously for the record, we will take exception for purposes of appeal on this.

swayed towards the viewpoint of opposing parties at Perez's trial. At Perez's trial, appellant was questioned by the prosecutor, who was the same prosecutor trying appellant's case. Appellant was also questioned by Perez's attorney, who, of course, was seeking to present appellant's testimony in a light most favorable to Perez. Appellant did not have an opportunity to present the facts in the light most favorable to himself at Perez's trial.

 Appellant's prior testimony did not contain adjudicative facts capable of accurate and ready determination that may have been used by the trial court to decide whether appellant's second statement was voluntary or whether appellant was in custody and *Miranda* warnings were required. For the reasons stated, we hold the trial court erred in taking judicial notice of appellant's testimony at Perez's trial for the purpose of ruling on appellant's motion to suppress.

### C. Custodial Interrogation

Appellant argues that he was in custody when his second videotaped statement was made, and therefore, the police were required to give him *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Article 38.22 of the Texas Code of Criminal Procedure prohibits the use of an oral statement of an accused made as a result of custodial interrogation unless an electronic recording is made of the statement, *Miranda* warnings are given, and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warnings. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(1)-(2) (Vernon 2005). No warnings are found anywhere in the transcript of appellant's second videotaped statement, and the State concedes no warnings were given. Therefore, the admissibility of appellant's second statement rests upon whether all or part of the second interview was a custodial interrogation.

 A person is in "custody" if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim. App.1996). The "reasonable person" standard presupposes an innocent person. *Id.* Moreover, the subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Id.* The Court of Criminal Appeals has recognized four factors relevant to determining custody:

(1) probable cause to arrest,

(2) subjective intent of the police,

(3) focus of the investigation, and

(4) subjective belief of the defendant.

*Id.* However, under *Stansbury v. California*, 511 U.S. 318, 321–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994), factors (2) and (4) have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials. *Dowthitt*, 931 S.W.2d at 254. The custody determination must be made on an ad hoc basis, after considering all of the objective circumstances. *Id.* at 255. Station house questioning does not, in and of itself, constitute custody. *Id.* Further, custody does not occur merely because the suspect submits to and fails a polygraph test. *Id.* However, the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; a consensual inquiry can escalate into custodial interrogation. *Id.*

 The Court of Criminal Appeals has outlined at least four general situations which may constitute custody: (1) when the suspect is physically.deprived of

his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Id.* Concerning the first three situations, *Stansbury* teaches that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. Concerning the fourth situation, *Stansbury* instructs that the officers' knowledge of probable cause be manifested to the suspect. *Id.* Such manifestation can occur if information substantiating probable cause is related by the suspect to the officers. *Id.* Furthermore, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

▇ Our custody analysis begins with a review of the objective circumstances. The complainant Amanda Garza was killed and found dead in the early morning hours of Sunday, August 31, 2003. The complainant was last seen with appellant and Perez shortly before she was killed. The complainant's body was found near appellant's home. On the day the complainant was killed, police officers located appellant and asked to speak with him. Appellant agreed and gave his first statement that he was present with Perez when Perez shot the complainant. After investigating appellant's first statement, the police officers asked appellant to take a polygraph test, which he took and failed. The police offi-

cers then wanted to question appellant further. Appellant agreed and started answering questions again, in what became his second statement.

During this interrogation, appellant stated for the first time that he was the first one to shoot the complainant, firing at her one time. At no time during this interrogation did the law enforcement officers tell appellant that he was free to leave. The record reflects that the interrogation lasted twenty-three minutes and that the officers asked appellant if he wanted to use the restroom at the end of the interrogation. The State concedes on appeal that appellant was arrested shortly after this second interrogation during which he admitted shooting the complainant. Although not reflected by the record that was before the trial court when it ruled on the motion to suppress, appellant's trial counsel conceded during the suppression hearing that appellant was offered something to drink.

During the second interrogation, appellant stated for the first time that he was the one who first shot the complainant. He did not assert that he shot the complainant accidentally or otherwise indicate facts that would arguably remove criminal liability. When appellant made these statements, there was probable cause to arrest appellant, yet the law enforcement officers did not tell appellant that he was free to leave. As noted by the *Dowthitt* court, the officers did not have to tell appellant that there was probable cause based on this statement by appellant; it is enough that the information substantiating probable cause is related by the suspect to the officers. *Dowthitt*, 931 S.W.2d at 255–57. Therefore, this case falls under the fourth situation described in *Dowthitt*. *Id.* (stating and holding that statements by suspect creating probable cause are sufficient to trigger the fourth situation, with-

out requiring that officers advise the suspect they believe there is probable cause); *Ruth v. State,* 645 S.W.2d 432, 436 (Tex. Crim.App.1979) (same); *Xu v. State,* 100 S.W.3d 408, 413–15 (Tex.App.-San Antonio 2002, pet. ref'd) (same); *Fiedler v. State,* 991 S.W.2d 70, 81–83 (Tex.App.-San Antonio 1998, no pet) (same); *State v. Zamora,* no. 14–96–00744–CR, 1997 WL 428470, at *2–4 (Tex.App.-San Antonio July 23, 1997, no pet.) (same) (not designated for publication); *contra State v. Rodriguez,* 986 S.W.2d 326, 329 (Tex.App.-El Paso 1999, pet. ref'd) (stating that suspect's statements creating probable cause are not enough and requiring that law enforcement officers reveal to suspect that they have probable cause based on suspect's statements).

Presuming for the sake of this analysis that appellant was innocent, he still knew that the complainant had been killed and found dead near appellant's home, in the early morning hours of Sunday, August 31, 2003. The complainant's dead body was found shortly after she was seen getting into a car with appellant and Perez. On the day the complainant was killed, police officers located appellant and asked to speak with him. Appellant gave his first statement that he was with Perez when Perez shot the complainant. After investigating appellant's first statement, the police officers asked appellant to take a polygraph test, which he took and failed. Appellant then agreed to answer more questions, and during this second interrogation, appellant stated for the first time that he was the first one to shoot the complainant, shooting her one time. The existence of probable cause, the officer's failure to tell appellant that he could leave, and these other circumstances would lead a reasonable person in appellant's position to believe that he was under restraint to the degree associated with an arrest after admitting that he was the first one to shoot the complainant. *See Dow-*

*thitt,* 931 S.W.2d at 255–57 (holding that circumstances showed interrogation became custodial after appellant admitted he was present during the murders, giving rise to probable cause and citing favorably the *Ruth* court's determination that the interrogation in *Ruth* had become custodial); *Ruth,* 645 S.W.2d at 436 (concluding that suspect's statement to officer that he shot the complainant created probable cause and made the interrogation custodial from that point on); *Xu,* 100 S.W.3d at 413–15 (concluding that suspect's statement to officer that he grabbed the complainant— who had been strangled—by the throat created probable cause and made the interrogation custodial from that point on); *Fiedler,* 991 S.W.2d at 81–83 (concluding that suspect's agreement with officer's description of events, which indicated that suspect murdered the complainant, created probable cause and made the interrogation custodial from that point on); *Zamora,* no. 14–96–00744–CR, 1997 WL 428470, at *2–4 (concluding that suspect's statement that she shot the complainant created probable cause and made the interrogation custodial from that point on).

Because the interrogation of appellant was custodial from the point after which appellant admitted he shot the complainant, the trial court erred in denying appellant's motion to suppress this part of appellant's statement based on appellant's failure to receive the required warnings from the law enforcement officers or waive his rights. *See* Tex.Crim. Proc.Code Ann. art. 38.22, § 3; *Ruth,* 645 S.W.2d at 436; *Xu,* 100 S.W.3d at 413–15; *see also Wilkerson v. State,* 173 S.W.3d 521, 527 n. 16 (Tex.Crim.App.2005) (noting the purpose for the prophylactic measures mandated by *Miranda* was to mitigate the inherent coerciveness of station house interrogations).

Having determined that the trial court erred in denying appellant's motion to sup-

press, we must decide whether this error is reversible. *See* Tex.R.App. P. 44.2. The error in this case violated appellant's federal constitutional rights. *See Xu,* 100 S.W.3d at 415. Further, the Court of Criminal Appeals has stated that appellate courts are not to speculate as to an appellant's reasons for pleading guilty or as to whether appellant would have pleaded guilty if a motion to suppress had been granted. *See McKenna v. State,* 780 S.W.2d 797, 799–800 (Tex.Crim.App.1989); *Kraft v. State,* 762 S.W.2d 612, 613–15 (Tex.Crim.App.1988). As long as the evidence that should have been suppressed "would in *any* measure inculpate the accused," this court must presume that the trial court's denial of appellant's motion to suppress influenced appellant's decision to plead guilty and is reversible error. *See McKenna,* 780 S.W.2d at 799–800; *Kraft,* 762 S.W.2d at 613–15. Because some of the statements made by appellant after the interrogation became custodial were "in any measure" inculpatory, we presume the trial court's erroneous denial of appellant's motion to suppress influenced appellant's decision to plead guilty. Therefore, the error is reversible.

Accordingly, we reverse the trial court's judgment and remand for a new trial consistent with this opinion.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

I respectfully concur in the court's judgment.

---

1. Appellant agreed that his testimony at Perez's trial would be admissible in a trial in this case. In that testimony, appellant described the material aspects of his September 2, 2003 statement. Therefore, if ,there had been a trial and conviction in this case, any error in admitting the September 2, 2003 statement likely would have been harmless. However,

---

The majority correctly reverses the trial court's judgment because the trial court erred in denying appellant's motion to suppress as to the part of appellant's September 2, 2003 statement given after his admission that he shot the complainant. The majority correctly concludes that the trial court erred in taking judicial notice of appellant's prior testimony, given at the trial of Esteban ("Steve") Perez. Nonetheless, this testimony, even if considered, would not change this court's stated conclusion that the interrogation of appellant became custodial when probable cause arose to arrest appellant and the law enforcement officers did not tell appellant he was free to leave.

Regarding the trial court's taking judicial notice of appellant's testimony at Perez's trial, the majority correctly concludes that appellant preserved error as to his complaint that this judicial notice was improper. Presuming for the sake of argument that the trial court acted properly in taking judicial notice or that appellant failed to preserve his complaint in this regard, appellant's testimony at Perez's trial would not change this court's analysis and conclusion.[1] Although appellant did testify at Perez's trial that his September 2, 2003 statement was freely and voluntarily given, the voluntariness of a confession is an issue distinct from whether appellant was in custody so as to require *Miranda* warnings. *See Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Wilkerson v. State,* 657 S.W.2d 784, 792 (Tex.Crim.App.1983).

as the majority correctly points out, under applicable precedent, the inquiry in this case, in which appellant pleaded "guilty," is only whether the evidence that should have been suppressed would inculpate appellant "in any measure." *See, e.g., McKenna v. State,* 780 S.W.2d 797, 799–800 (Tex.Crim.App.1989).

Appellant also stated that, when he was making his September 2, 2003 statement, the investigators did not at any time tell him that he did not have a right to leave. This testimony is consistent with the transcript reflecting appellant's statement. The investigators did not tell appellant that he could not leave, and they did not tell him that he was free to leave. Appellant further testified that the investigators showed him the exit door, offered him a drink, and offered him the ability to go to the restroom when he wanted. This testimony appears to address what appellant claims the officers told him at the beginning of his September 2, 2003 statement. In any event, though the transcript of appellant's statement does not reflect that the officers made these statements, even if they did, these statements would not change the outcome in this appeal.

In addition, appellant also testified at Perez's trial that he was "not being held without [his] will" and that he was not in custody at that time; however, these statements describe the situation at the beginning of appellant's September 2, 2003 statement. Again, these facts are not contrary to the majority's conclusion that the interrogation became custodial later, when appellant stated that he was the first one to shoot the complainant. Appellant also stated his beliefs about whether he was free to leave at any time; however, appellant's subjective belief in this regard is not relevant to the custody determination. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996). In sum, appellant's prior testimony would not alter this court's conclusion that, when appellant stated on September 2, 2003, that he shot the complainant, this manifestation of probable cause, combined with the other circumstances, would lead a reasonable person to believe that he was under restraint to the

degree associated with an arrest. *See id.* at 255.

## SUPPLEMENTAL MAJORITY OPINION ON MOTION FOR REHEARING

Panel consists of Justices ANDERSON, FROST, and Senior Justice EDELMAN *.

JOHN S. ANDERSON, Justice.

On August 30, 2007, this court issued a substitute opinion in which it reversed and remanded the case for a new trial. On October 15, 2007, the State filed a second motion for rehearing requesting this court to reconsider its substitute opinion. We overrule the State's second motion for rehearing, but we issue this supplemental opinion to address matters raised by the State.

In its second motion for rehearing, the State argues even assuming appellant was in custody during the second interview, the lack of *Miranda* warnings did not render appellant's confession inadmissible because Officer McDaniel advised appellant of his rights before he made appellant's first videotaped statement two days earlier. According to the State, it is irrelevant whether appellant was in custody because the warnings appellant received during the first interview were still in effect during the second interview. The State, however, admits it did not bring forth this argument on appeal or in its first motion for rehearing.

## A. Can the Court Consider a New Argument on Rehearing?

▊ Before addressing the merits, we must first determine whether we can consider a new argument raised in a motion for rehearing. The Court of Criminal Appeals has determined if a party raises a

* Senior Justice Richard H. Edelman sitting by assignment.

new ground for the first time on a motion for rehearing, the decision of whether to consider the new matter is "left to the sound discretion of the appellate court." *Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App.1990). The Court has held there are times when "as justice requires" or "in the interest of justice" an appellate court may consider a motion for rehearing to decide an issue not presented in the original briefs. *Hughes v. State*, 878 S.W.2d 142, 151 (Tex.Crim.App.1990) (citing *Boyle v. State*, 820 S.W.2d 122, 141 (Tex.Crim.App.1991) (op. on reh'g); *Rochelle*, 791 S.W.2d at 121). Accordingly, we exercise our discretion and will consider the State's new argument "in the interest of justice."

 In appellant's response, he argues the State waived this new argument because it failed to raise this issue during the suppression hearing. We disagree with appellant. When the State prevails at the suppression hearing, the court of appeals is obligated to uphold the trial court's ruling on a motion to suppress if that ruling is supported by the record and is correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App.2003); *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim.App.2000). Essentially, when the State wins a motion to suppress and the defendant appeals the decision, the State may bring forth new theories of law applicable to the case which were not raised in the suppression hearing. *See Armendariz*, 123 S.W.3d at 404–05 (reversing the appellate court and determining the trial court could have reasonably denied appellant's motion to suppress given the record and the applicable law even though the State failed to bring forth the arguments at the suppression hearing); *State v. Mercado*, 972 S.W.2d 75, 77 (Tex.Crim.App. 1998) ("[W]hen the prosecution wins on the

motion to suppress, the government cannot be faulted for not insisting upon an inquiry into yet another basis upon which it might defeat the suppression motion.").

Appellant cites to *State v. Mercado* and *State v. Steelman* in support of his argument that issues not argued at the suppression hearing are deemed waived on appeal; however, appellant fails to recognize both *Mercado* and *Steelman* stand for the proposition that when the State *loses* the suppression hearing and appeals the decision, the State may not bring forth new points of error. *See State v. Steelman*, 93 S.W.3d 102, 105–07 (Tex.Crim. App.2002); *Mercado*, 972 S.W.2d at 77–78. In this case, the State won the suppression hearing and the defendant appealed, therefore, *Mercado* and *Steelman* do not apply.

Appellant also cites to this court's decision in *Barocio v. State* as support. In *Barocio*, the trial court denied the defendant's motion to suppress, the defendant appealed the decision, the State attempted to raise a new argument to support the denial, and this court, in a plurality opinion, held the State's new argument was waived. *Barocio v. State*, 117 S.W.3d 19, 26 (Tex.App.-Houston [14th Dist.] 2003) (plurality op.), *rev'd on other grounds*, 158 S.W.3d 498 (Tex.Crim.App.2005). However, the clear import of *Armendariz* is that the State, in the wake of a trial court's denial of a motion to suppress, retains the right to supplement its arguments on appeal supporting the trial court's ruling on the motion. *See Armendariz*, 123 S.W.3d at 404–05. This rule is inapplicable only when the State is not the prevailing party on the motion to suppress. *See Steelman*, 93 S.W.3d at 105–07; *Mercado*, 972 S.W.2d at 77–78. Thus, *Barocio* conflicts with the rule in *Armendariz* and incorrectly applies the law. Furthermore, *Barocio* is a one-judge plurality opinion, which has no precedential value, and is not binding authority

on this court. *See Chavez v. State,* 9 S.W.3d 817, 833 (Tex.Crim.App.2000) (stating a plurality opinion is not binding precedent). Accordingly, we find the State did not waive its argument by failing to raise it during the suppression hearing.

**B. Were the Warnings Given to Appellant During the First Interview Still in Effect During the Second Interview?**

The State concedes it did not read appellant his *Miranda* rights before conducting the second interview; however, it now argues this lack of *Miranda* warnings did not render appellant's confession inadmissible because Officer McDaniel advised appellant of his *Miranda* rights before he made appellant's first videotaped statement two days earlier. We will analyze this argument under both constitutional principles and the Texas Code of Criminal Procedure ("the Code").

***1. United States and Texas Constitutional Principles***

**a. Applicable Law**

The safeguards established in *Miranda* come into play when a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The State, however, cites two Texas Court of Criminal Appeals cases for the proposition that when a suspect provides two statements that are separated by the passage of time and *Miranda* warnings were provided before the first statement, the mere passage of time does not automatically vitiate the prior warnings. *See Jones v. State,* 119 S.W.3d 766, 773–74 n. 13 (Tex.Crim.App. 2003); *Ex parte Bagley,* 509 S.W.2d 332, 337–38 (Tex.Crim.App.1974).

In *Ex parte Bagley,* the arresting officer, a magistrate, and the assistant district attorney warned the defendant. *Ex parte Bagley,* 509 S.W.2d at 335. Subsequent warnings were given before a polygraph exam and before the complained of statement. *Id.* During the polygraph examination, the defendant expressed his desire to make a statement, so the assistant district attorney again warned the defendant, and the defendant's statement was reduced to writing. *Id.* This statement, however, was not the confession introduced into evidence. *Id.* at 336. Upon completion of the written statement, the defendant returned to his jail cell. *Id.* Later that evening, the assistant district attorney questioned the defendant again. *Id.* Before taking a second statement, the assistant district attorney again warned the defendant but in general terms. *Id.* at 336–37. The two then went over the defendant's previous statement and determined it needed corrections. *Id.* at 336. This resulting confession was the confession introduced at trial. *Id.* On appeal, the defendant claimed the confession introduced at trial was void because at the time he made it he had not been warned of his right to have an attorney present during the interrogation. *Id.* at 334.

Ultimately, the Court decided the warnings given to the defendant immediately preceding his second statement were adequate, but the Court also found the warnings given six to eight hours earlier during his first statement would have satisfied the dictates of *Miranda. Id.* at 337. As support, the Court cited federal circuit court cases for the proposition that *Miranda* warnings were not automatically extinguished by the mere passage of time, and in some cases *Miranda* warnings were still effective for statements given two or three days later. *See id.* (citing *United States v. Hopkins,* 433 F.2d 1041 (5th Cir.1970); *United States v. Springer,* 460 F.2d 1344 (7th Cir.1972); *Maguire v. United States,* 396 F.2d 327 (9th Cir.1968)).

In *Jones v. State*, while being questioned by the State on two different occasions, the defendant made two statements regarding the murder of Berthena Bryant. *Jones*, 119 S.W.3d at 771. The detective read the defendant his *Miranda* rights before each of these statements. *Id.* Nine or ten days later, the defendant gave a statement to a Texas Ranger implicating himself in two extraneous murders. *Id.* The Texas Ranger did not read the defendant his rights until after he made his statement. *Id.* at 772. On appeal, the defendant argued the Texas Ranger's failure to inform the defendant of his rights before making his statement violated his Fifth Amendment rights protected by *Miranda*. *Id.*

In *Jones*, the Court held the statement was inadmissible because the defendant was not properly warned. *Id.* at 776. Presiding Judge Keller, however, wrote a concurring opinion in which she provided a comprehensive study of case law from numerous jurisdictions illustrating the effectiveness of *Miranda* warnings and their ability to remain in effect for purposes of interviews conducted days after the administration of the warnings. *Id.* at 794–801 (Keller, P.J., concurring). The majority opinion recognized Judge Keller's analysis and stated "[i]t is true that the 'mere passage of time' does not, by itself [vitiate] prior *Miranda* warnings." *Id.* at 774 n. 13. The majority also stated "[t]he cases cited by the concurrence are very appropriate to, and might well be dispositive of, this issue had the interrogation been by [the same officer] about [the same murder]." *Id.* This language supports the conclusion if appellant had made a subsequent, unwarned statement to the same officer regarding the same offense, the earlier *Miranda* warnings would have remained in effect. *See id.*

The Fort Worth Court of Appeals accepted this concept in *Miller v. State*, 196 S.W.3d 256, 266 (Tex.App.-Fort Worth 2006, pet. ref'd). In *Miller*, officers arrested the defendant on September 11, 2003, and that same day, the defendant gave a statement after being read his *Miranda* rights. *Id.* at 262. The next day, the defendant once again received his *Miranda* warnings and agreed to become a confidential informant. *Id.* at 263. On September 16, the police had a meeting with the defendant and learned the defendant had violated the terms of their agreement. *Id.* The officers subsequently obtained a search warrant for the defendant's home. *Id.* After the defendant showed the officers the location of the drugs and money, they informed the defendant of his *Miranda* rights. *Id.* On appeal, the defendant argued the officers obtained his confession in violation of *Miranda*. *Id.* at 262.

The court of appeals, relying on *Jones*, *Ex parte Bagley*, and other federal court cases, concluded "[a]lthough Appellant was not given his *Miranda* rights during the meeting on September 16, 2003, he met with the same officer who had read his *Miranda* rights only four days earlier. The questioning on both occasions dealt with the same subject-Appellant acting as a confidential informant. There was no need for the officers to give additional *Miranda* rights before [the officer] conducted further discussions with Appellant regarding his roll as a confidential informant." *Id.* at 266–67.

█ After reviewing the relevant case law, we believe a number of factors should be considered when trying to determine whether previous *Miranda* warnings are still in effect for subsequent, unwarned statements. These factors include: (1) the passage of time; (2) whether the subsequent interrogation was conducted by the

same officer; (3) whether the subsequent interrogation involved the same crime; (4) whether the officer reminded the defendant of the previous warnings; and (5) whether the officer engaged in actions that diluted the efficacy of the warnings. *See Ex parte Bagley*, 509 S.W.2d at 336–37; *Jones*, 119 S.W.3d at 774 n. 13, 794–801 (Keller, P.J., concurring); *Miller*, 196 S.W.3d at 266–67; *see also Hopkins*, 433 F.2d at 1045.

■ In the current case, appellant gave his first videotaped statement on August 31, 2003. Prior to this first videotaped statement, Officer McDaniel read appellant his *Miranda* warnings. After the first statement, appellant agreed to stage a recorded phone conversation with Perez, his co-defendant. Police then became suspicious of appellant's involvement because Perez implicated appellant in the shooting. On September 2, appellant agreed to take a polygraph test, which he failed. At this point, he was questioned and videotaped a second time by Officers McDaniel and Moreno, and he eventually confessed to shooting Garza. During the second videotaped statement, the officers did not read appellant his *Miranda* warnings.

In applying the above factors, the passage of two days is not too long to render the warnings ineffective. *See Miller*, 196 S.W.3d at 266–67 (holding the passage of four days was not too long). Additionally, the second interview was conducted by the same officer[1] about the same offense. Further, there is no evidence in the record to suggest the officer engaged in actions that diluted the efficacy of the warnings. While it is true the officer did not remind appellant of the previous warnings, we do not think this factor alone is enough to render the statement inadmissible.[2] Accordingly, we hold appellant's second statement was not obtained in violation of *Miranda*.

## 2. Texas Code of Criminal Procedure

Under Texas law, the Code provides additional rules, beyond the requirements of *Miranda*, for the admission of an oral confession. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon 2005). In its motion for rehearing, the State recognizes the cases cited in the previous section may only apply to cases involving *Miranda* warnings rather than the warnings required by article 38.22 of the Code since article 38.22 requires the warnings to appear on the recording itself. As a result, the State argues appellant failed to preserve error regarding his rights under the Code. Thus, we must first determine whether appellant waived his rights under article 38.22, and then, if necessary, decide if a prior warning remains in effect for a second oral statement for purposes of article 38.22.

### a. Did Appellant Waive His Rights Under Article 38.22?

■ The State argues appellant waived his rights under the Code because appellant never cited article 38.22 in his suppression motion and because appellant failed to argue it at the suppression hearing. We disagree with the State. The record reflects appellant's first attorney filed a motion to suppress (hereinafter "the First Motion") in which he argued appellant's rights under the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution, and articles 38.22 and 38.23 of the Code were violated. Approxi-

---

1. Although Officer Moreno was present during the second interview, Officer McDaniel was the one who questioned appellant.

2. Officer McDaniel did remind appellant that they had spoken with each other previously.

mately one year later, appellant obtained a second attorney who filed a second motion to suppress (hereinafter "the Second Motion"), but the Second Motion did not mention a violation of appellant's rights under the Code. The trial court, however, held only one suppression hearing, and the record is unclear whether the trial court ruled on the First Motion, the Second Motion, or both. Nothing in the record suggests appellant's first motion was withdrawn or amended, so presumably the trial court considered both motions.[3]

**3.** The dissent argues if the trial court did consider the First Motion, the First Motion failed to preserve error because appellant's general assertion that his statements were taken in violation of article 38.22 was too global and unspecific. The dissent claims appellant's general assertion was not specific enough to make the trial court aware of his argument that the statements were inadmissible based on the officers' failure to give the warnings on the videotape. The dissent cites three cases supporting this proposition; however, we find each case distinguishable from this case.

In *Swain v. State*, appellant's motion to suppress generally asserted his statements were inadmissible under article 38.23, among other federal and state constitutional provisions. *Swain v. State*, 181 S.W.3d 359, 365 (Tex.Crim.App.2005). During the suppression hearing, appellant failed to complain about being questioned after asserting his right to counsel, and instead he simply objected that his statements were inadmissible under articles 38.22, 14.03, and 14.06. *Id.* On appeal, however, appellant specifically argued his statement were taken in violation of his right to counsel. *Id.* The court found the global statements made in his motion and during his suppression hearing were not sufficiently specific to preserve his argument on appeal. *Id.* Here, however, as discussed below, appellant alerted the trial court during the suppression hearing of his specific argument regarding article 38.22.

In *Olson v. State*, appellant made an oral motion to suppress arguing his statements were inadmissible under article 38.22. *Olson v. State*, No. 14–06–00338–CR, 2007 WL 1745837, at *1 (Tex.App.-Houston [14th Dist.] June 19, 2007, no pet.) (mem. op., not designated for publication). However, on appeal, appellant based his arguments on the federal and state constitutions. *Id.* This court held appellant's objection at trial did not comport with his objection on appeal, so he failed to preserve error. *Id.* The dissent is not arguing appellant's trial objection does not comport with his complaint on appeal; therefore, this case is not applicable.

In *Aparicio v. State*, appellant's written motion to suppress generally alleged his statements should be suppressed based on violations of article 38.22. *Aparicio v. State*, No. 14–03–01213–CR, 2004 WL 2283584, at *2 (Tex.App.-Houston [14th Dist.] Oct. 12, 2004, no pet.) (mem. op., not designated for publication). However, during the suppression hearing appellant argued only that appellant appeared "half asleep" and "didn't really seem to know what was going on." *Id.* Then, on appeal, appellant tried to argue his statements were inadmissible under article 38.22, section 3(a)(3) because the device used to record the statement was not capable of making an accurate recording, the recording was not accurate, and the operator of the device was not competent. *Id.* at *1–*2. This court found appellant's argument raised on appeal did not comport with his objection made to the trial court, thus appellant failed to preserve the issue for review. *Id.* at *2. In a footnote, this court stated "despite appellant's reference to Article 38.22, he did not alert the trial court to the alleged errors of which he now complains. Accordingly, appellant's mere reference to Article 38.22 is not sufficient to preserve error on appeal." *Id.* at *2 n. 4. In this case, despite appellant's general reference to article 38.22 in the First Motion, as discussed below, he alerted the trial court to his specific complaint regarding article 38.22; therefore, his complaint was sufficient to preserve error.

The dissent argues, in the alternative, even if the statements in the First Motion were sufficient to preserve error, the trial court did not rule on the First Motion. But, as stated, the record is unclear whether the trial court ruled on the First Motion, the Second Motion, or both. The dissent supports its position by arguing appellant's counsel's arguments during the hearing were all within the scope of the Second Motion; however, this is incorrect. As explained below, appellant's attorney made an argument during the hearing regarding the lack of *Miranda* warnings on the videotape, which is an argument within

Furthermore, assuming the trial court only considered the Second Motion, the fact the Second Motion does not mention article 38.22 does not automatically mean appellant waived his rights under the Code. Appellate Rule 33.1(a)(1)(A) provides that error is preserved if the "complaint was made to the trial court by a timely request, objection, or motion" that states the grounds "with sufficient specificity to make the trial court aware of the complaint." Tex.R.App. P. 33.1(a)(1)(A); *Mata v. State*, 46 S.W.3d 902, 908(Tex.Crim.App.2001). Therefore, if appellant made the trial court aware of his complaint during the suppression hearing, he sufficiently preserved error, despite his failure to include the argument in the Second Motion. *See Mata*, 46 S.W.3d at 907-08 (holding appellant preserved error even though his written motion for suppression failed to argue the expert's testimony should be suppressed because appellant argued, during the suppression hearing, the expert's testimony should be suppressed, and he argued with sufficient specificity to apprise the trial court of his complaint).

After reviewing the record, we conclude that, during the suppression hearing, appellant's counsel argued the officer violated appellant's rights under article 38.22, section 3(a)(2) with sufficient specificity to make the trial court aware of his complaint. *See* Tex.R.App. P. 33.1(a)(1)(A). The record reflects the following argument made by appellant's counsel:

the scope of the First Motion. Further, the dissent claims the trial court's statement that it denied *"your* Motion to Suppress Mr. Resendez's statement"* is an indication the trial court denied the Second Motion filed by appellant's new counsel rather than his former counsel. We do not agree the word "your" completely precludes the possibility the trial court considered the First Motion as well.

Again, there's nothing on State's Exhibit No. 2-A [the transcript of appellant's second videotaped statement] which would be reflective of him being read his *Miranda* warnings at the beginning, that it's a verbatim transcript of what he simply said. *They did not Mirandize him on the tape,* which they did not do, that's clear. The Court's had an opportunity to review that tape, State's Exhibit No. 2-A is not going to be reflective of any *Miranda* warnings given thus far. (Emphasis added)

Immediately after this statement by appellant's counsel, the court stated "I understand, counsel. You have made a fine point of law." Additionally, during the hearing, the prosecutor stated "[w]e will stipulate nowhere on the videotape of State's Exhibit No. 2-A is there Mirandized [sic] warnings given to this defendant." We need not engage in speculation as to whether the court was aware of appellant's complaint. The trial court's statement and the prosecutor's stipulation indicate they both understood appellant's counsel was arguing a violation of the Code due to the absence of *Miranda* warnings on the videotape. We find the argument made during the suppression hearing was sufficient enough to put the trial court on notice appellant was arguing a violation of article 38.22, section 3(a)(2). *See* Tex.R.App. P. 33.1(a)(1)(A).[4] Accordingly, appellant did not waive his rights under the Code.

**b. Did the State Violate Article 38.22, Section 3(a)(2)?**

4. We find it worth noting the State's initial appellate brief never raised the issue of waiver and, in fact, the State argued why the officers were not required to advise appellant of his rights under either *Miranda* or the Code. The State did not bring forth its waiver argument until its second motion for rehearing.

Since we find appellant sufficiently preserved this argument for appeal, we must next determine whether the *Miranda* warnings provided before appellant's first videotaped statement were still in effect during appellant's second videotaped statement, satisfying the requirements of article 38.22.

Article 38.22, section 3(a)(2) states no oral statement of an accused shall be admissible unless "prior to the statement *but during the recording* the accused is given the warning in Subsection (a) of Section 2 . . . and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (emphasis added). Further, section 3(e) requires the "courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state." *Id.* § 3(e); *see Davidson v. State*, 25 S.W.3d 183, 185 (Tex.Crim.App. 2000) (noting by its plain language section 3(e) requires strict compliance with section 3(a)).[5]

The Fort Worth Court of Appeals addressed a situation very similar to the current case. In *Hargrove v. State*, the defendant made three statements while in custody. *Hargrove v. State*, 162 S.W.3d 313, 316 (Tex.App.-Fort Worth 2005, pet. ref'd). The defendant's initial interview was videotaped, and the officer advised the defendant of his *Miranda* rights on the tape. *Id.* The defendant denied any criminal involvement in his first statement. *Id.* at 317. The defendant was subsequently charged and taken in front of a magistrate who read him his *Miranda* rights again. *Id.* While being escorted back to the jail, the defendant requested to speak to the officer. *Id.* The officer interviewed the defendant a second time on videotape, and the defendant admitted involvement. *Id.* On the videotape, the officer stated "you've just had your rights read," but he did not actually read the defendant his rights on the videotape. *Id.* at 323. On appeal, the defendant argued the second statement was inadmissible because it violated article 38.22, section 3(a)(2). *Id.* at 322–23. The court of appeals held since the section was not strictly complied with, the defendant's oral confession was inadmissible, and the trial court abused its discretion in admitting the second oral statement. *Id.* at 323.

We agree with the Fort Worth court. Because the officer failed to give appellant his warnings on the videotape in violation of article 38.22, section 3(a)(2), he failed to comply with the strict requirements mandated by article 38.22, section 3(e). *See* Tex.Code.Crim. Proc. Ann. art. 38.22, §§ 3(a)(2), 3(e). The trial court thus abused its discretion in admitting appellant's second oral statement. *See Hargrove*, 162 S.W.3d at 323. To be sure, we are in no way changing the analysis in our substitute opinion filed August 30, 2007 regarding whether appellant was in custody. While we have determined appellant's second statement did not violate appellant's constitutional rights under *Miranda*, we still conclude the trial court erred. Because the interrogation of appellant was custodial from the point after which appellant admitted he shot the complainant, the trial court erred in denying appellant's motion to suppress as to this part of appellant's second statement based on the officers' failure to comply with the statutory requirements of article 38.22, section 3(a)(2). *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a) (stating no oral statement

---

**5.** The two exceptions which do not require strict compliance are not applicable in this situation. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(e)(1)-(2).

of an accused made as a result of "custodial interrogation" is admissible unless certain statutory requirements are followed).

### c. Was the Violation Harmless?

 Having found appellant's statement was inadmissible under the Code, we must determine whether allowing its admission caused harm. The protection of article 38.22 has no constitutional ramifications. *See Nonn v. State*, 117 S.W.3d 874, 880–81 (Tex.Crim.App.2003). Rather, it is a "procedural evidentiary" rule that "merely prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted against him/her at trial." *Id.* at 880. Thus, as long as *Miranda* is satisfied, the admission of a statement that does not comply with article 38.22 is a nonconstitutional error that will not result in a reversal of the judgment unless the record demonstrates the erroneously admitted statement "had a substantial or injurious [effect] on the jury verdict." *See id.* at 881.

In this case, however, appellant pleaded guilty after the trial court denied his motion to suppress. The Court of Criminal Appeals has stated appellate courts are not to speculate as to an appellant's reasons for pleading guilty or as to whether appellant would have pleaded guilty if a motion to suppress were granted. *See McKenna v. State*, 780 S.W.2d 797, 799–800 (Tex. Crim.App.1989); *Kraft v. State*, 762 S.W.2d 612, 613–15 (Tex.Crim.App.1988). As long as the evidence that should have been suppressed "would in *any* measure inculpate the accused," this court must presume the trial court's denial of appellant's motion to suppress influenced appellant's decision to plead guilty and is reversible error. *See McKenna*, 780 S.W.2d at 799–800; *Kraft*, 762 S.W.2d at 613–15. Because some of the statements made by appellant after the interrogation became custodial were "in any measure" inculpatory, we presume the trial court's erroneous denial of appellant's motion to suppress influenced appellant's decision to plead guilty, thus, having a substantial or injurious effect on appellant's rights. *See Fischer v. State*, 207 S.W.3d 846, 860–61 (Tex.App.-Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 376 (Tex.Crim.App.2008) (finding the defendant's substantial rights were affected because he plead guilty after the improper denial of his motion to suppress). Therefore, the error is reversible.

### CONCLUSION

Having considered the State's arguments in its second motion for rehearing, we overrule its motion, but we issue this supplemental opinion to address new matters raised by the State. The disposition in our previous opinion remains the same; we reverse the trial court's judgment and remand for a new trial consistent with our opinion issued August 30, 2007 and this supplemental majority opinion.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting on motion for rehearing.

On August 30, 2007, this court issued a substitute majority opinion in which it reversed and remanded this case for a new trial, and I filed a concurring opinion. The State filed a second motion for rehearing requesting this court to reconsider its substitute opinion. Today the court overrules the State's second motion for rehearing and issues a supplemental majority opinion to address matters raised in the second motion. I agree with sections A and B.1 of the supplemental majority opinion, in which the court exercises its discretion to consider the arguments in the State's second motion and in which the court agrees

with the State that appellant's second statement was not obtained in violation of *Miranda.* But I part company with the majority in section B.2, in which the court concludes that the trial court reversibly erred by denying appellant's motion to suppress on the ground that appellant's second statement was inadmissible based on a failure to comply with article 38.22, section 3(a)(2) of the Texas Code of Criminal Procedure. Because appellant never asked the trial court to suppress his statement on this basis, appellant failed to preserve error. This court should grant the State's second motion for rehearing, withdraw the prior opinion, and affirm the trial court's judgment.

## Article 38.22 of the Texas Code of Criminal Procedure

Article 38.22 of the Texas Code of Criminal Procedure deals with various subjects. *See* Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon 2006). Under section 2(a), a written statement made by an accused as a result of custodial interrogation is not admissible as evidence in any criminal proceeding unless it is shown on the face of the statement that the accused received certain warnings. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 2(a). Under section 2(a), no written statement made by an accused as a result of custodial interrogation is admissible as evidence in any criminal proceeding unless it is shown on the face of the statement that the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warnings prescribed by section 2(a). *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 2(a). Under section 3(a), no oral or sign-language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) an electronic recording, which may include motion picture, videotape, or other visual recording, is made of the statement; (2) prior to the statement but during the recording the accused is given the warnings provided in article 38.22, section 2(a) and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning; (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; (4) all voices on the recording are identified; and (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under article 38.22. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a). Under section 3(b), every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(b). Under section 6, there are various procedural requirements regarding determinations by the trial court and jury as to the voluntariness of a statement by the accused. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 6. Under section 8, notwithstanding the other provisions of article 38.22, a statement by an accused made as a result of a custodial interrogation is admissible against the accused in a Texas criminal proceeding if (1) the statement was obtained in another state and was obtained in compliance with the laws of that state; or (2) the statement was obtained by a federal law enforcement officer in this state or another state and was obtained in compliance with the laws of the United States. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 3(b). Out of all

these parts and subparts of article 38.22, the only aspect at issue in this case is section 3(a)(2)'s prohibition against using an oral statement of an accused made as a result of custodial interrogation if the accused was not given the warnings in article 38.22, section 2(a) prior to the statement but during the recording. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).

### Appellant's First Motion to Suppress

On September 19, 2003, appellant filed a motion to suppress (hereinafter "First Motion"), in which he made the following arguments:

- When appellant had any conversations with law enforcement officers, he was under arrest.
- Any statements made by appellant were involuntary and were coerced from appellant.
- Appellant was deprived of his right to counsel and did not make an intelligent and knowing waiver of that right.
- Appellant's statements were tainted by the illegal and unlawful arrest of appellant, in violation of his rights under the United States Constitution, the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure.
- "Statements made by [appellant] were taken without the safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure."
- The admission of statements by appellant is a violation of appellant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the Texas Constitution, and articles 1.05 and 38.23 of the Texas Code of Criminal Procedure.

### Appellant's Second Motion to Suppress

Without having obtained a hearing or ruling on the First Motion, appellant retained new counsel, and that counsel was substituted as appellant's counsel of record in January 2004. More than thirteen months after filing the First Motion and without ever having obtained a hearing on that motion, on October 29, 2004, appellant's new counsel filed a second motion to suppress (hereinafter "Second Motion"), in which he made the following arguments:

- Appellant gave a statement to police that the State intends to use against him. This statement is a confession that appellant shot the complainant without legal justification.
- This confession was elicited in violation of appellant's rights under the Fifth Amendment of the United States Constitution, and article I of the Texas Constitution. "Further, [appellant] argues that this confession was taken contrary to the manner in which the Criminal Courts have interpreted those statutes."

### The Hearing

Ten days after appellant filed the Second Motion, on November 8, 2004, the trial court conducted a hearing (the "Hearing"). At the beginning of the Hearing, the trial court stated that the hearing was on appellant's "Motion to Suppress the Confession." Appellant's counsel then argued the following points:

- On September 2, 2003, after failing a polygraph test, police officers interrogated appellant without making a recording. During this unrecorded interrogation appellant confessed to shooting the complainant.
- After appellant made this confession, the officers started a videotaped interrogation without administering *Miranda* warnings.
- Once appellant confessed prior to the videotaped interrogation, the interrogation of appellant became custodial.

Therefore, appellant asked the trial court to suppress the September 2, 2003 videotaped statement because it was (1) involuntary and (2) given by appellant without "understanding certain rights that had been guaranteed him both under Miranda [sic] and our State Constitution."

- There is nothing in the transcript of appellant's September 2 videotaped statement that reflects appellant was read his *Miranda* warnings at the beginning of his statement. The officers did not give appellant *Miranda* warnings on the videotape.

### Failure To Preserve Error

#### *Appellant did not preserve error in the First Motion as to section 3(a)(2).*

In the First Motion, appellant asserted globally that the admission of appellant's statements would be a violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Appellant also stated that his statements were taken in violation of article 38.22. Given the many different sections and requirements of article 38.22, this assertion is also global and unspecific. In the First Motion, appellant did not assert that any statement was inadmissible based on the officers' failure to give the section 2(a) warnings at the beginning of the videotape. The global assertions in the First Motion are not sufficient to preserve error on an argument that appellant's September 2, 2003 statement (hereinafter "Statement") should be suppressed because the officers violated article 38.22, section 3(a)(2). *See Swain v. State,* 181 S.W.3d 359, 365 (Tex.Crim.App.2005) (holding that global statements that appellant's Fifth Amendment rights were violated and that officers did not comply with article 38.22 did not preserve error as to argument that his Fifth Amendment rights

were violated by continued interrogation after he allegedly requested counsel); *see also Olson v. State,* No. 14–06–00338–CR, 2007 WL 1745837, at *1 (Tex.App.-Houston [14th Dist.] June 19, 2007, no pet.) (holding that motion in which defendant asserted that statements should be suppressed under article 38.22 did not preserve error as to arguments that statements should be suppressed under federal and state constitutions) (not designated for publication); *Aparicio v. State,* No. 14–03–01213–CR, 2004 WL 2283584, at *2 (Tex. App.-Houston [14th Dist.] Oct. 12, 2004, no pet.) (holding that motion to suppress in which defendant globally asserted that statement should be suppressed under article 38.22 did not preserve error as to argument that statement was inadmissible under article 38.22, section 3(a)(3)) (not designated for publication).

#### *Appellant did not preserve error in the Second Motion as to section 3(a)(2).*

There is no language whatsoever in the Second Motion that arguably would preserve error as to an argument that appellant's Statement should be suppressed because the officers violated article 38.22, section 3(a)(2).

#### *Appellant did not assert his section 3(a)(2) argument at the Hearing.*

At the Hearing, there was no mention of any part of article 38.22. Appellant's counsel did not assert that the Statement should be suppressed because the officers violated article 38.22, section 3(a)(2). Although appellant's counsel did assert that the officers did not read appellant his *Miranda* warnings at the beginning of the Statement or on any part of the videotape of the Statement, this assertion was consistent with counsel's argument that the offi-

cers violated the Fifth Amendment by failing to give appellant *Miranda* warnings at the beginning of his videotaped statement, given that the interrogation allegedly had become custodial when, just before the videotaped statement, appellant admitted to shooting the complainant. Because appellant failed to complain at the Hearing about any alleged failure to follow section 3(a)(2), appellant did not preserve error at this hearing. *See Swain,* 181 S.W.3d at 365.[1]

### Conclusion

Appellant did not preserve error as to any argument that the Statement should be suppressed because the officers violated article 38.22, section 3(a)(2). For the reasons stated in sections A and B.1 of the supplemental majority opinion, the trial court did not abuse its discretion by implicitly determining that the Statement was not obtained in violation of the Fifth Amendment under the *Miranda* decision and its progeny. This court should grant the State's second motion for rehearing and affirm the trial court's judgment.

---

1. Even if the statements in the First Motion would have been sufficient to preserve error as to section 3(a)(2), the trial court did not rule on this motion. All of appellant's counsel's arguments at the Hearing were within the scope of the Second Motion that he had just filed. Trial counsel did not refer to the First Motion or to any of the several arguments contained in the First Motion but not the Second Motion. The trial court's statement that it denied *"your* Motion to Suppress *Mr. Resendez's* statement" is also an indication that the trial court denied the motion to suppress filed by appellant's new counsel rather than the motion filed by appellant's former counsel. (emphasis added).